■ PAUL E. GELBARD et al., Respondents, v SANDRA ESSES et al., Appellants. — In a turnover proceeding pursuant to CPLR 5225 (subd [b]), the appeal is from a judgment of the Supreme Court, Nassau County (Kelly, J.), dated September 15, 1981, which, after a nonjury trial, directed appellants to turn over to the Sheriff all of the corporate assets of the judgment debtor conveyed to appellants pursuant to certain corporate security agreements or so much of such assets to satisfy the outstanding judgment. Judgment reversed, on the law and as a matter of discretion, and the proceeding is remitted to Special Term for a new trial and further proceedings in accordance herewith, with costs to abide the event. In February, 1978, Esses & Co., Inc. (hereinafter the corporation), a holding company, defaulted on an unsecured note wherein petitioners' predecessor, Gustav Golden, was the payee. There was then owing the sum of $70,000. The corporation's principals, who each owned 45% of the shares of its stock, were Harry Esses and Sam Esses. These two individuals had guaranteed payment of a total of $50,000 of the unsecured promissory note. In May, 1978, Everyone's Stores, Inc. (hereinafter Everyone's), one of the corporation's subsidiary operating companies with 95% of its common stock owned by the corporation, filed a petition for an arrangement under chapter 11 of the Federal Bankruptcy Act in the United States District Court, Southern District of New York. That court authorized Everyone's and Amalgamated Drug Distributors, Inc., an operating company with 80% of its common stock owned by Harry and Sam Esses, to continue control of their operations as debtors-in-possession. In July, 1978 Harry Esses borrowed $17,500 from his wife, Deanne, and in return executed in her favor a demand promissory note as well as a security agreement pledging all of his stock in the corporation and in two of its subsidiaries, Everyone's and Amalgamated Drug Distributors, Inc., as collateral for the loan. Also in that month, Sam Esses borrowed $17,500

from his wife, Sandra, executing similar documents in her favor. Each security agreement stated that the collateralized stock was in the possession of the secured party. The $35,000 so obtained by Messrs. Esses was deposited, pursuant to paragraph 9 of Everyone's amended plan of arrangement, with the creditors' committee "as evidence of [Everyone's] good faith to confirm its Arrangement". Paragraph 9 of the amended plan of arrangement also stated that "[o]n October 30, 1978, provided the Creditors' Committee ha[d] in its possession consents in dollar amount in excess of 50% of the dollar amount of unsecured claims [against Everyone's] then on file", Everyone's would cause a third party or parties to deposit an additional $65,000 with the attorneys for the creditors' committee. On October 16, 1978, petitioners instituted an action in the Supreme Court, Nassau County, against the corporation on the unsecured note and, *inter alia,* against Harry Esses and Sam Esses on their guarantees. Petitioners' motion for summary judgment in that action was thereafter granted, and on April 3, 1979, judgment was entered against the corporation for $81,550, and against Harry Esses and Sam Esses, personally, for a total of $50,000 upon their guarantees of $25,000 each for the payment of the note. This judgment has been satisfied only to the extent of $50,000 paid by Harry Esses and Sam Esses on their guarantees, leaving the sum of $31,550, plus interest, outstanding and unsatisfied against the corporation. On November 6, 1978, upon the debtor Everyone's application, Bankruptcy Judge Ryan signed an order which provided, in pertinent part: "that HARRY ESSES and SAM ESSES be * * * authorized to borrow * * * $65,000 from Sandra Esses and Deanne Esses, their wives, and to collateralize said loans by a further pledge *of their respective stock interests in Esses & Co., Inc.,* Everyone's Store, Inc., and Amalgamated Drug Distributors, Inc., and they are further authorized to take all steps necessary for Sandra Esses and Deanne Esses to perfect a security interest and or purchase of in [*sic*] said stock" (emphasis supplied). On the same day that Judge Ryan's order was signed, Harry Esses obtained a loan of $32,500 from his wife Deanne Esses, and in return he executed: (1) a $32,500 promissory note, payable on demand, wherein he was apparently the sole maker, and (2) a security agreement wherein he *and the corporation* were designated as debtors. The stated indebtedness was "$50,000 * * * inclusive of $17,500.00 advanced pursuant to a similar Security Agreement dated July 21, 1978". The stated collateral included all of the stock owned by Harry Esses in the corporation and Amalgamated Drug Distributors, Inc., *and* substantially all of the stock owned by the holding corporation, namely, "42-1/2% of the stock of Everyone's Stores, Inc. owned by Esses & Co. Inc."; "[a]ll of the stock of Es-Bros. Bargain Stores, Inc., owned by Esses & Co., Inc., Everyone's Stores, Inc. and/or Harry Esses"; "[a]ll of the stock of Everyone's Fabrics, Inc., owned by Esses & Co., Inc., Everyone's Stores, Inc. and/or Harry Esses"; "[a]ll of the stock of 2976 Third Avenue, Inc., owned by Esses & Co., Inc., Everyone's Stores, Inc., and/or Harry Esses"; and "[a]ll right, title, interest and benefits of Everyone's Stores, Inc., in and to a leasehold interest in [certain] premises". Eight days later, on November 14, 1978, Samuel Esses and *the corporation* executed similar documents in favor of his wife, Sandra Esses, in return for her further loan of $32,500. The collateral included all of Sam Esses' stock in the corporation and Amalgamated Drug Distributors, Inc.; 42½% of the stock of Everyone's owned by Esses & Co. Inc.; "[a]ll of the stock of Bronx 159th St. Corp., owned by Esses & Co. Inc., Everyone's * * * and/or Samuel Esses"; "[a]ll of the stock of Himrod St. Corp.," owned by the corporation, Everyone's and/or Samuel Esses; and "[a]ll right, title, interest and benefits of Everyone's" in the leasehold interest of certain premises. It appears from the record that the $65,000, plus the earlier deposited $35,000, were delivered to the creditors' committee, the debtor's plan was confirmed, and Everyone's was rehabilitated.

On December 5, 1978, Deanne Esses made written demand upon Harry Esses for repayment of the $50,000 loan plus interest, noting that if not paid, she would, pursuant to the terms of the security agreement, be entitled to her rights to the collateral. Three days later, Sandra Esses made the same demand upon Sam Esses. Since the collateral was, as stated in the security agreements, already in the possession of the secured parties, Deanne and Sandra Esses, no further proceedings to foreclose on the stock owned by the corporation (which constituted, essentially, its entire assets) were instituted. Thus, when petitioners as judgment creditors attempted to enforce payment of the $31,550 balance plus interest due on the April 3, 1979 judgment, there were no assets of the judgment debtor corporation remaining from which the judgment could be satisfied. Thereafter, petitioners instituted the instant proceeding. A trial (see, generally, CPLR art 4; CPLR 410) was held to determine: (1) whether property subject to the judgment (that is, the stock and leases previously held by the corporation) had been transferred without any consideration flowing to the corporation, rendering it barren of any assets, and/or (2) whether the transfer had been made with intent to hinder, delay or defraud petitioners in recovering the balance due. Special Term concluded, *inter alia,* that the transfer of the corporation's assets was not for fair consideration and was fraudulent as defined by sections 272 and 273-a of the Debtor and Creditor Law and directed that Deanne Esses and Sandra Esses turn over the corporate assets of the judgment debtor conveyed to them pursuant to the terms of the security agreements executed in November, 1978, or so much of such property as was sufficient to satisfy the judgment. For the reasons which follow, we remit for a new trial. We agree that this special enforcement proceeding was properly before Special Term. CPLR 5225 (subd [b]) authorizes the institution of a special proceeding against a transferee of property from a judgment debtor "where it is shown that the judgment debtor is entitled to the possession of such property or that the judgment creditor's rights to the property are superior to those of the transferee" (CPLR 5225, subd [b]; *Oil City Petroleum Co. v Fabac Realty Corp.,* 50 NY2d 853). Whereas formerly, when trying to set aside a fraudulent transfer, a plenary action was required, a special proceeding under CPLR 5225 now obviates that necessity (*Siemens & Halske GmbH. v Gres,* 32 AD2d 624). As Professor Siegel has observed, this means that CPLR 5225 may serve as the means to set aside a transfer made by a judgment debtor to defraud his creditors (Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR 5225:7, p 247; *Julien J. Studley, Inc. v Lefrak,* 66 AD2d 208, affd 48 NY2d 954). On this record, petitioners' allegations concerning the transfers at issue were sufficient to sustain a turnover proceeding. Further, under the totality of the circumstances, we also agree with Special Term's implicit holding that the fundamental nature of the execution by the corporation of the November, 1978 security agreements collateralizing essentially all of its assets, followed by the December, 1978 letters of foreclosure, was that of conveyances as contemplated by article 10 of the Debtor and Creditor Law (see Debtor and Creditor Law, § 270). The issue that remains is whether such transfers qualify as fraudulent and can thus be set aside by the petitioner judgment-creditors in this special proceeding pursuant to CPLR 5225 (subd [b]). Section 273-a of the Debtor and Creditor Law provides: "Every conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such action has been docketed against him, is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment." Clearly, the conveyances made to the transferees were executed at a time when the judgment debtor was a defendant in an action for money damages. Thus, if those

transfers were made without fair consideration, they were fraudulent as to petitioners herein without regard to the actual intent of the transferor (see *Cabrera v Ferranti,* 89 AD2d 546). "Fair consideration" is given for property or an obligation when, *inter alia,* "such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount *not disproportionately small* as compared with the value of the property, or obligation obtained" (Debtor and Creditor Law, § 272, subd b; emphasis supplied). Accordingly, if the transfer is a security transfer, the comparative "not disproportionately small" standard applies in determining fair consideration and what constitutes fair consideration is a question of fact to be determined upon the facts and circumstances of the particular case (*Halsey v Winant,* 258 NY 512). In proceedings pursuant to CPLR 5225 (subd [b]), wherein a judgment creditor seeks payment from a transferee of the judgment debtor, the creditor has the burden of establishing that his rights are superior to those of the transferee. Whether such rights are superior is a matter to be determined by applying the fraudulent conveyance provisions of the Debtor and Creditor Law (6 Weinstein-Korn-Miller, NY Civ Prac, par 5225.17). The burden of proof is on the creditor seeking to set aside a conveyance as fraudulent to establish that the debtor's conveyance was made without fair consideration (see *Petretti v Finnigan,* 68 Misc 2d 1007; *Fox v Sizeland,* 170 Misc 390). However, as in the case at bar, where the creditor asserts that the transferees paid insufficient consideration and the evidentiary facts as to the nature and value of the consideration are within the transferees' control, the burden of coming forward with evidence disclosing the nature and value of the security interest furnished by the corporation in return for the transferees' loan of $100,000 (on which they rapidly foreclosed) and the fairness of the consideration therefor, should be cast upon the transferees (cf. *Republic Ins. Co. v Levy,* 69 Misc 2d 450). This is particularly so here because the Bankruptcy Court did not authorize the creation of a security interest in the assets of the corporation, Esses & Co., but rather, merely authorized Harry Esses and Sam Esses to furnish collateral in the form of their stock interests in the corporation, Everyone's and Amalgamated Drug Distributors, Inc. The transfers made after the corporation was made a party to a petitioners' action to recover on the unsecured note were, under the particular circumstances of this case, inherently suspect (cf. Debtor and Creditor Law, § 273-a). However, if the debtor corporation was not possessed of sufficient assets to satisfy all or any part of its indebtedness on the note prior to its subsidiaries' receipt of $100,000, so that the failure to satisfy the judgment against the corporation could not be said to have been proximately caused by the conveyances, the transfers at issue cannot be considered as fraudulent. As the record is bereft of evidence with respect to this issue, except insofar as it is apparent that the failure to rehabilitate Everyone's would have constituted a severe wound to its parent corporation, and as the record is further bereft of evidence with respect to the value of the corporation's assets transferred to appellants as a result of their "foreclosure", we remit for a new trial on these issues and the ultimate question of whether the money advanced to Everyone's in return for the pledge of essentially all the parent corporation's stock interests and leaseholds constituted fair consideration within the meaning of the Debtor and Creditor Law (see Debtor and Creditor Law, § 272, subd b). Mollen, P. J., Gulotta, Brown and Boyers, JJ., concur.