Brian PETERSEN, Plaintiff,

v.

Marcello VALLENZANO, individually and doing business as A.B.M., A.B.C. Health Spa, Waterbed Wholesalers Supply and Service Company, Fax Net International and Attorney Paralegal Services Company (Lawyers Paralegal Services Corporation), Defendant.

No. 89 Civ. 5346 (RWS).

United States District Court, S.D. New York.

April 1, 1994.

Kayser & Redfern, New York City (Declan P. Redfern, of counsel), for plaintiff.

Marcello Vallenzano, defendant pro se.

Max Markus Katz, P.C., New York City, for ABCO Pool.

## *OPINION*

SWEET, District Judge.

Defendant Marcello Vallenzano ("Vallenzano") has filed an Order to Show Cause against Plaintiff judgment-creditor Brian Petersen ("Petersen") seeking to vacate the restraint placed by Plaintiff on Abco Pool Distributors Inc.'s ("Abco Pool") National Bank of New York City bank account number 075 773 724 (the "bank account"). Defendant also moves for sanctions to be awarded against Petersen. In turn, Petersen opposes Vallenzano's Order to Show Cause to vacate the restraint and cross moves for an order imposing a constructive trust on the property and assets of Abco Pool and to set aside the transfer of Defendant's property and assets to Abco Pool. Abco Pool has submitted a memorandum in support of Vallenzano's Order to Show Cause to vacate the restraining order and in opposition to Petersen's cross motion.

For the reasons set forth below, Vallenzano's Order to Show Cause seeking to vacate the restraint is denied as is his motion seeking sanctions. Petersen's cross motion imposing a constructive trust on Vallenzano and Abco Pool as an improper conveyance by a defendant is granted.

### *The Parties*

Petersen is a citizen of California and a judgment creditor of Abco Tek Technologies, Inc. ("Abco Tek").

Vallenzano, a New York resident, was the former President of Abco Pool.

Abco Pool, a New York corporation with offices in New York, was formally dissolved by the Secretary of State on March 25, 1981. Stephen Scarpetti ("Scarpetti") is allegedly the current President of Abco Pool.

### *Prior Proceedings and Facts*

The prior proceedings and facts in this action are fully set forth in the previous opinions of this Court, familiarity with which is assumed. *See Peterson v. Vallenzano,* No. 88 Civ. 5346, 1991 WL 2774, 1991 U.S. Dist. LEXIS 180 (S.D.N.Y. Jan. 9, 1991) ("*Peter-*son I "); *Petersen v. Vallenzano,* No. 89 Civ. 5346, 1992 WL 116427, 1992 U.S. Dist. LEXIS 6922 (S.D.N.Y. May 22, 1992) ("*Petersen II* "); *Petersen v. Vallenzano,* 996 F.2d 303 (2d Cir.1993) ("*Petersen III* "). Only those facts relevant to the instant motions are presented below.

In 1987, Petersen obtained a judgment of $200,000 against Abco Tek in a jury trial before the Southern District of New York. Although the judgment was affirmed on appeal on October 17, 1988, it remains unsatisfied. Petersen filed this action on August 8, 1989, against Vallenzano for the amount of the judgment.

Petersen filed a second motion for summary judgment in May of 1990 seeking to pierce Abco Tek's corporate veil in order to hold Vallenzano personally liable for the judgment. On January 9, 1991, the Court denied Petersen's motion as there still existed a question of material fact concerning whether Vallenzano had used Abco Tek's funds for personal ends. *See "Peterson I,"* No. 88 Civ. 5346, 1991 WL 2774, 1991 U.S. Dist. LEXIS 180 (S.D.N.Y. Jan. 9, 1991).

In February 1992, after additional discovery, Petersen filed a second motion for summary judgment seeking to pierce the corporate veil and to hold Vallenzano personally liable for the judgment. That motion was granted in May of 1992, *Petersen II,* No. 89 Civ. 5346, 1992 WL 116427, 1992 U.S. Dist. LEXIS 6922 (S.D.N.Y. May 22, 1992), and affirmed in a memorandum opinion by the Second Circuit on May 26, 1993, *Petersen III,* 996 F.2d 303 (2d Cir.1993).

Since that time, additional discovery proceedings against Vallenzano have revealed a relationship between Vallenzano and Abco Pool. In June of 1993, Petersen restrained Abco Pool's bank account at the National Bank of New York. Petersen's subpoena of the bank revealed Vallenzano to be the sole signatory and President of Abco Pool as late as May, 1993. *See* Pl.'s Ex. D.

Vallenzano filed an Order to Show Cause on November 14, 1993 seeking the immediate vacation of Petersen's restraint on Abco Pool's bank account contending that Abco

Pool is a discrete entity separate and unique from himself.

Abco Pool has cross-moved in support of Vallenzano's motion, contending that on May 26, 1990 he consummated an Operating Agreement[1] (the "Agreement") with Stephen Scarpetti. Scarpetti Aff. at 8. This Agreement included the following provisions:

> Vallenzano would become Vice President of Abco Pool and was thereafter placed under the direction of Scarpetti, the new President of Abco Pool. Vallenzano was to lend his time, leased vehicles, telephone and credit cards used by Abco Pool. In turn, Abco Pool agreed to provide office space to Vallenzano to conduct his business.

> Vallenzano was to be a signatory on Abco Pool's bank account.

> Abco Pool allegedly agreed to deduct $80.00 per week from the $80,000 debt owed to it by Vallenzano. In the event Abco Pool showed a profit, Vallenzano was to be credited 5% of that profit after taxes towards his debt on a per annum basis.

> Abco Pool agreed to pay directly Vallenzano's personal credit cards, telephones, and leased vehicles used in conjunction with its operations.

Subsequent discovery in this action established that Vallenzano has established the same pattern of payment between Abco Pool and its creditors as that which existed with Abco Tek and its creditors. *Cf. Petersen II*, No. 89 Civ. 5346, 1992 WL 116427, 1992 U.S. Dist. LEXIS 6922 (S.D.N.Y. May 22, 1992). Vallenzano testified in his depositions that Abco Pool used his credit cards, motor vehicles, motor insurance, rental space, and telephones. In addition, Vallenzano retained control over Abco Pool's check book.

Based on these revelations, Petersen has cross-moved to set aside the transfer of Vallenzano's property and assets to Abco Pool and to impose a constructive trust on the property and assets of Abco Pool.

Oral argument on the motions was heard on January 5, 1994. The motions were considered fully submitted at that time.

*Discussion*

### A. Conveyances By Defendants

■ In general, to establish a fraudulent conveyance, a plaintiff must prove either that a transfer was made without fair consideration, or that it was made with the actual intent to hinder, delay or defraud creditors or that the defendant was insolvent or was rendered insolvent by the transfer. *International Ass'n of Machinists & Aerospace Workers v. Allegis Corp.*, 144 Misc.2d 983, 545 N.Y.S.2d 638 (1989).

■ New York Debtor and Creditor Law has an additional provision, entitled "Conveyances by Defendants," which provides expanded remedies for judgment-creditors under certain circumstances:

> Every conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment.

N.Y.Debt. & Cred.Law § 273–a (McKinney's 1990). Under this provision, three elements are necessary to establish liability: (1) that the conveyance was made without fair consideration; (2) that the conveyor is a defendant in an action for monetary damages, or that a judgment has been docketed against him or her; and (3) that the defendant failed to satisfy the judgment. *Schoenberg v. Schoenberg*, 113 Misc.2d 356, 358, 449 N.Y.S.2d 137, 139, *modified on other grounds*, 90 A.D.2d 827, 456 N.Y.S.2d 14 (N.Y.Sup.Ct.1982). Questions of actual intent and insolvency are irrelevant. *Id.*

### B. Vallenzano's Conveyance to Abco Pool Was Made Without Consideration

■ The first element necessary to establish § 273–a liability is that there must be

---

1. There is no signed copy of the Agreement before the Court. Abco Pool contends that the original, signed copy of the Agreement is now in the custody of Petersen's lawyers. There is no

disagreement between the parties as to the existence and the alleged content of the Agreement, rather they disagree only as to its legal effect.

fair consideration for the property conveyed. Under New York Debtor and Creditor law, fair consideration is given for property:

(a) when in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or

(b) when such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.

N.Y.Debt. & Cred.Law § 272 (McKinney's 1990); *Corbin v. Litke,* 105 Misc.2d 94, 431 N.Y.S.2d 800 (1980). The test for fair consideration may be distilled as follows: first, there must be a fair exchange of value; and second, there must be good faith. *See In re Fill,* 82 Bankr. 200, 215 (Bankr.S.D.N.Y. 1987) (citing *Julien J. Studley, Inc. v. Lefrak,* 66 A.D.2d 208, 412 N.Y.S.2d 901, 905 (2d Dep't), *aff'd,* 48 N.Y.2d 954, 425 N.Y.S.2d 65, 401 N.E.2d 187 (1979)).

■ The burden of proof is on the creditor seeking to set aside a conveyance as fraudulent to establish that the conveyance was made without fair consideration. *Gelbard v. Esses,* 96 A.D.2d 573, 576, 465 N.Y.S.2d 264, 268 (N.Y.App.Div.1983); *ACLI Gov't Secur., Inc. v. Rhoades,* 653 F.Supp. 1388, 1391 (S.D.N.Y.1987), *aff'd without op.,* 842 F.2d 1287 (2d Cir.1988). The courts may determine what is fair consideration for a conveyance by looking to "the facts of each particular case" in which there is an alleged fraudulent conveyance. *Colombo v. Caiati,* 129 Misc.2d 338, 340, 493 N.Y.S.2d 244, 246 (N.Y.Sup.Ct.1985) (citing *Gelbard v. Esses,* 96 A.D.2d 573, 465 N.Y.S.2d 264 (2d Dep't 1983)), *aff'd,* 131 A.D.2d 532, 516 N.Y.S.2d 476 (2d Dep't 1987); *see also Orbach v. Pappa,* 482 F.Supp. 117, 119–20 (S.D.N.Y.1979) (construing consideration pursuant to N.Y.Debt. & Cred.Law § 272).

In this case, Petersen argues that the Agreement between Vallenzano and Scarpetti was an improper conveyance without con-

sideration since the two entities are inseparable as evidenced by the fact that Vallenzano continues to exercise the dominion and control over Abco Pool. On the other hand, Scarpetti, the alleged President of Abco Pool, contends that Abco Pool is indeed a separate and distinct entity from Vallenzano, that Vallenzano is and was a debtor of Abco Pool, and that Vallenzano permits his credit cards, vehicles and so forth to be used by Abco Pool as a means to pay off Vallenzano's alleged debt.

The evidence submitted with Petersen's cross motion indicates that Abco Pool is not an independent or separate entity from Vallenzano. First, Abco Pool was dissolved by proclamation by the Secretary of State in 1981, Pl.'s Ex. E, and therefore it officially ceased to exist at that time.[2] Second, until July 6, 1993 Vallenzano was the sole signatory on Abco Pool's bank account and had held himself out to the bank as President of Abco Pool. Pl.'s Ex. D. In addition, a review of Abco Pool's payments indicates that the Vallenzano signed checks and made payments from Abco Pool's bank account to his own creditors, including payments to:

Ford Motor Credit, for vehicles leased in Vallenzano's name, Pl.'s Ex. M;

rental payments for 151–53 34th Street to Gherardi, for Vallenzano's office space, Pl.'s Ex. P;

Con Edison payments for utility bills at 151–53 34th Street, Pl.'s Ex. R, S;

New York Telephone payments for telephone numbers of businesses controlled by Vallenzano, Pl.'s Ex. T, U;

Credit card bills payments, Pl.'s Ex. F, G, H, I, J, and K; and

payments to Boy Scouts of America.

Accordingly, it would appear that Vallenzano has retained control of Abco Pool, both by retaining the title of President and in making payments on his own behalf from the Abco Pool bank account.

Although, payment of an antecedent debt may be deemed fair consideration under New

---

2. New York law only recognizes *de facto* corporate status in order to require corporations to fulfill their outstanding obligations, not to assert their corporate privileges. *See D & W Central*

*Station Alarm Co. v. Copymasters, Inc.,* 122 Misc.2d 453, 456, 471 N.Y.S.2d 464, 466 (N.Y.Civ.Ct.1983).

York law, *see Strongin v. International Acceptance Bank, Inc.,* 70 F.2d 248 (2d Cir. 1934), no evidence has been presented here to indicate the amount of the debt, the amount by which the alleged debt was reduced, or even how such debt may have been incurred in the first place. In the absence of sufficient evidence of the existence of the alleged antecedent debt and fair consideration a conveyance will be found void. *See, e.g., In re Fill,* 82 Bankr. 200, 215–19 (Bankr. S.D.N.Y.1987) (holding that a debtor's former mother-in-law, to whom debtor transferred property in alleged satisfaction of prior loans not memorialized in contemporaneous writing and not reported on debtor's financial statements, failed to satisfy burden of showing that she paid "fair consideration" for property within the meaning of New York's fraudulent conveyance laws.); *Century 21 Constr. Corp. v. Rabolt,* 143 A.D.2d 873, 874, 533 N.Y.S.2d 528, 529–30 (N.Y.App.Div.1988) (holding judgment debtor failed to show that there was antecedent debt due by debtor which provided fair consideration for conveyance notwithstanding copies of various checks and money orders allegedly given to debtor since only two of checks had notation that funds were for benefit of debtor or his business).

Abco Pool contends that it agreed to pay the cost of Vallenzano's leased vehicles, telephones and personal credit cards used in conjunction with its business operations. Yet neither Vallenzano nor Abco Pool explain why there is no indication on the cancelled check or ledgers which indicate what portion of the bills was attributable to Abco Pool and what portion was attributable to Vallenzano's other business operations. Nor is there any indication that Abco Pool's wrote down any of Vallenzano's purported debt.

Perhaps more damaging to Vallenzano's claim is the fact the creditors for Abco Pool and Vallenzano appear to be virtually interchangeable, leading to the unavoidable conclusion that Vallenzano has merely shifted his business assets and good will to yet another corporate shell. Abco Pool has not demonstrated any consideration for the transfer of Abco Pool's bank account on July 6, 1993 from Vallenzano to Scarpetti, the date it was restrained, and as such, it is evident that in reality the account belonged to Vallenzano, who was its sole signatory. In cases such as this one, in which the reservation of the dominion and control over the property in dispute is inconsistent with the effective disposition of the property by the judgment debtor, the courts may determine that a fraudulent conveyance has occurred. *See Leventhal v. Spillman,* 234 F.Supp. 207 (E.D.N.Y.1964), *aff'd,* 362 F.2d 264 (2d Cir. 1966); *Schutte v. Wittner,* 149 F.Supp. 451 (E.D.N.Y.1957).

### C. *A Judgment Has Been Docketed Against Vallenzano*

The second element necessary to establish § 273–a liability is that the conveyor (Vallenzano) is a defendant in an action for monetary damages. Abco Pool contends that Vallenzano is not a proper judgment debtor at the time of the conveyance since the original judgment was obtained solely against Abco Tek in 1987 and Vallenzano was only made a judgment debtor in 1992, pursuant to this Court's ruling in *Petersen II,* No. 89 Civ. 5346, 1992 WL 116427, 1992 U.S.Dist. LEXIS 6922 (S.D.N.Y. May 21, 1992) (holding Abco Tek was a corporate veil for Defendant). Citing *Frybergh v. Weissman,* 145 A.D.2d 531, 536 N.Y.S.2d 465 (N.Y.1988),[3] Abco Pool argues that Plaintiff's motion must be dismissed as the conveyance from Vallenzano to Abco Pool was made before the decision and judgment to pierce the corporate veil and since there is no judgment against Abco Pool.

However, the language of the statute casts a broad swathe in that it extends liability for a "conveyance made without fair consideration when the person making it is a *defendant in an action for money damages or a judgment.*" N.Y.Debt. & Cred.Law § 273–a (emphasis added). Since Petersen filed the action against Vallenzano personally for the amount of the 1987 judgment on August 8, 1989, Vallenzano was a "defendant" for the purposes of the statute on May 26, 1990—the

---

**3.** *Frybergh v. Weissman,* 145 A.D.2d 531, 536 N.Y.S.2d 465 (N.Y.1988) merely says a judgment must be enter against *any* of the defendants, a requirement satisfied here.

date the alleged conveyance under the Agreement occurred.

At any rate, Vallenzano became a judgment debtor personally the date the judgment was entered against him—July 15, 1992—when this Court found Vallenzano to be the alter ego of Abco Tek. *See Petersen II,* No. 89 Civ. 5346, 1992 WL 116427, 1992 U.S.Dist. LEXIS 6922 (S.D.N.Y. May 21, 1992). Due to that determination, Vallenzano has become the judgment debtor of Petersen as of the date of the original judgment, in this case, December 14, 1987. Accordingly, any transfers of Vallenzano's property and assets after that date without adequate consideration would be subject to the parameters of New York Debtor and Creditor Law § 273–a.

The New York courts have applied § 273–a to conveyances which occurred before, during and after a judgment. *See, e.g., Community Nat. Bank & Trust Co. v. Statile,* 94 A.D.2d 754, 462 N.Y.S.2d 693 (Sup.Ct.1983) (conveyance by guarantor's wife of property to her sister prior to initiation of litigation on guarantor's indebtedness amounted to a fraudulent conveyance); *Farm Stores, Inc. v. School Feeding Corp.,* 102 A.D.2d 249, 477 N.Y.S.2d 374, *aff'd in part, dismissed in part,* 64 N.Y.2d 1065, 489 N.Y.S.2d 877, 479 N.E.2d 222 (1985) (finding fraudulent conveyance when corporation transferred money to shareholders at time that an action for money damages was pending against it and ensuing judgment against it was never satisfied.).

Under either theory of the case—that Abco Pool is merely another of Vallenzano's corporate shells, or that the conveyance never in fact occurred—Vallenzano as a conveyor of Abco Pool is a defendant in Petersen's action for monetary damages. Accordingly, Petersen's claim against Vallenzano satisfies the second liability prong under § 273–a of the New York's Debtor and Creditor law.

### D. *Vallenzano has Failed to Satisfy the Judgment*

Similarly, Petersen's claim against Vallenzano satisfies the third element necessary to establish liability under § 273–a: namely, to date, Vallenzano has failed to satisfy the judgment entered against Abco Tek in the 1987 jury trial, and against him personally in

the Opinion of this Court in *Petersen II* on May 21, 1992.

In sum, Petersen has convincingly established that Vallenzano's alleged conveyance of Abco Pool to Scarpetti falls within the parameters of New York Debtor and Creditor Law § 273–a, which voids conveyances made by defendants. The conveyance to Abco Pool was made without fair consideration; while Vallenzano was a defendant in an action for monetary damages; and for a judgment which Vallenzano has yet to satisfy. *See Schoenberg v. Schoenberg,* 113 Misc.2d 356, 358, 449 N.Y.S.2d 137, 139, *modified on other grounds,* 90 A.D.2d 827, 456 N.Y.S.2d 14 (N.Y.Sup.Ct.1982).

### Conclusion

For the reasons set forth above, Vallenzano's alleged conveyance of Abco Pool to Scarpetti falls under the umbrella of New York Debtor & Creditor Law § 273–a governing conveyances made by defendants and the alleged conveyance is hereby set aside. Petersen's motion to impose a constructive trust on the property and assets of Abco Pool is granted. Vallenzano's Order to Show Cause requesting the Court to vacate the restraint placed on Abco Pool's bank account is denied as is his motion for sanctions.

Settle order on notice.