INTERPOOL LIMITED, Plaintiff,

v.

Barry PATTERSON, et al., Defendants.

INTERPOOL LIMITED, Petitioner,

v.

RMC HOLDINGS LIMITED PARTNERSHIP, et al., Defendants.

Nos. 89 Civ. 8501 (LAK), 95 Civ. 2868 (LAK).

United States District Court, S.D. New York.

June 15, 1995.

As Amended June 16, 1995.

Lloyd Clareman, New York City, for plaintiff.

Keith L. Flicker, Kenneth M. Simon, Flicker, Garelick & Associates, New York City, for defendants Richard Cuneo, Monique Cuneo, Genco Associates, Inc., Container Options, Inc., RMC Holdings Ltd. Partnership, and RAC Family Trust.

## OPINION

KAPLAN, District Judge.

Shortly before this case was scheduled to go to trial, and unbeknownst to plaintiff or the Court, defendant Richard Cuneo conveyed substantially all of his non-exempt as-

sets to a limited partnership of which he and his wife are the sole partners. He then transferred his partnership interests to a family trust of which he and his wife are the sole trustees and beneficiaries. The net result of the transfers was that Cuneo and his wife retained exclusive control over and beneficial use of Cuneo's assets, but the partnership agreement and trust instrument purported to place those assets substantially beyond the reach of creditors. Plaintiff subsequently recovered a substantial judgment against Cuneo which has not been satisfied and now seeks to set them aside on the ground that the transfers were both actually and constructively fraudulent as to plaintiff.

## The Context of This Dispute

Plaintiff Interpool Limited ("Interpool") commenced the first of these two actions (No. 89–8501) against Cuneo and others in 1989 alleging claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO") and for common law fraud and breach of fiduciary duty. Cuneo, who had been Interpool's agent for the sale of used shipping containers, allegedly sold Interpool equipment to himself and his co-conspirators at sweetheart prices without Interpool's knowledge, thus diverting substantial profits and business opportunities from Interpool to himself.

By March 1994, No. 89–8501 was virtually ready for trial. The joint pretrial order was due on March 17, 1994 and was filed, after signature by Judge Kram, on March 31, 1994. No motion for summary judgment had been made. The case awaited only a firm trial date.

## The Challenged Transfers

### RMC Holdings Limited Partnership

On March 24, 1994, Cuneo and his wife, with the assistance of a Florida attorney named Howard Rosen, entered into an agreement of limited partnership of RMC Holdings Limited Partnership ("RMC"). Cuneo and his wife transferred property valued at $1,357,600 and $47,600, respectively, to RMC as the initial capital contributions.[1] Each of them is both a general and a limited partner. The property thus transferred was all or substantially all of Cuneo's property that is not exempt from execution under the law of Florida, the State in which he resides.

■■■ The partnership engages in no business other than the ownership of the cash, cash equivalents and securities transferred to it by the Cuneos, who are its only partners. Distributions of net cash flow and capital may be made only in amounts and at times deemed appropriate in the sole discretion of "the General Partner." (Clareman Aff.Ex. A, §§ 4.3, 4.5, 6.2(c); see also FLA. STAT.ANN. §§ 620.138, 620.139, 620.145, 620.146 (West 1993))[2]. As there are two general partners, each with equal general partnership interests, the joint action of both Cuneos is required in order for RMC to make any payment of any kind in respect of the partnership interests. See FLA.STAT.ANN. §§ 620.186 (Uniform Partnership Act governs in cases not provided for in limited partnership statute), 620.645 (all partners have equal rights in management) (West 1993); II ALAN R. BROMBERG & LARRY E. RIBSTEIN, BROMBERG AND RIBSTEIN ON PARTNERSHIP §§ 6.03(b), 6.03(c) (1991). The Cuneos, however, in their capacities as general partners, retain the power to use all of the partnership assets for their own benefit. (See Clareman Aff.Ex. A, Art. 8)

Even more interesting is a provision of the RMC partnership agreement that purports to prohibit, or at least discourage, execution on the interest of a partner in the partnership. Article 12 provides in substance that the taking or encumbering of a partnership interest by levy, foreclosure, charging order, execution or other similar involuntary pro-

---

1. The property consisted of stock in Intermodal Services, Inc., previously owned by Cuneo and valued at $1.2 million, notes payable to Cuneo valued to $110,000, and cash and cash equivalents of $95,200. Everything but half of the $95,200 came from Cuneo rather than his wife.

2. The rights of Cuneo as a partner in RMC are governed by Florida law both because the part-

nership agreement contains a Florida choice of law clause and because the partnership is organized under Florida law exclusively among Florida partners. E.g., Fisher v. Reich, No. 92 Civ. 4158, 1995 WL 23966, at *7, 1994 U.S.Dist. LEXIS 17121, at *20–22 (S.D.N.Y. Dec. 1, 1994).

ceeding is deemed a Prohibited Transfer. A creditor who brings an action resulting in such a taking or encumbrance is treated as an assignee of the partnership interest and may receive only such distributions of net cash flow attributable to that interest as are properly disbursed. (*Id.* §§ 12.2(a), 12.3(a)) The creditor, however, is prohibited from taking any role in the management of RMC and from "act[ing] in any manner as a Partner." (*Id.*) Thus, a judgment creditor who successfully charges or levies upon Cuneo's partnership interests, or the purchaser of those interests at a judicial sale, would be entitled to receive such cash flow, and only such cash flow, if any, as Cuneo and his wife decide to distribute.

### The RAC Family Trust

A week after creating RMC, Cuneo, as settlor, transferred his 95.613% limited partnership interest in RMC to himself and his wife, as trustees, again with the aid of Attorney Rosen. The transfer expressly was made "[f]or no consideration." (Clareman Aff.Ex. C, next to last page) The RAC Family Trust agreement, which is revocable by Cuneo, provides that the trustee shall pay to or apply for the benefit of Cuneo so much of the net income and/or principal of the trust as the trustee deems advisable. (*Id.* Art. I) Subject to Cuneo's power of appointment by will, the proceeds of the trust would pass to Mrs. Cuneo and the couple's daughters following Cuneo's death.

The trust instrument also contains a so-called "Protective Provision," the burden of which is that no creditor may reach Cuneo's interest in the trust except to the extent that income or principal is actually paid over to Cuneo by the trustee. (*Id.* Art. III) In the event that two trustees are serving, which is now the case, any action by the trustees must be unanimous. (*Id.* Art. VIII(F)) Thus, any creditor levying upon or charging Cuneo's beneficial interest in the trust would be entitled to receive only such amounts as Cuneo and his wife jointly decide to pay.

### Prior Proceedings

The civil RICO case went to trial in November 1994 and resulted in a jury verdict against Cuneo in the amount of $4,520,000 plus attorneys fees of $299,805.18 and pre-judgment interest. *See Interpool Ltd. v. Patterson,* No. 89 Civ. 8501, 1994 WL 665850 (S.D.N.Y. Nov. 28, 1994). Cuneo's motion for a new trial was denied in January 1995. *Interpool Ltd. v. Patterson,* 874 F.Supp. 616 (S.D.N.Y.1995). No stay of execution was sought and Cuneo's appeal was dismissed by the Court of Appeals on March 14, 1995.

Plaintiff appears to have commenced enforcement proceedings in early 1995 and to have learned of the challenged transfers during the early part of the year. On February 23, 1995, the Court granted Interpool's motion for a restraining order barring Cuneo from taking certain actions that threatened to frustrate enforcement of the judgment. On March 13, 1995, it extended the restraining order and directed Cuneo and certain of his co-defendants to comply with discovery requests in aid of execution. *Interpool Ltd. v. Patterson,* No. 89 Civ. 8501, 1995 WL 105284 (S.D.N.Y. Mar. 13, 1995).

Cuneo was deposed in March 1995 in connection with the proceedings to enforce the judgment. His explanation for the challenged transfers was unilluminating. He was unable, or chose not, to explain how he and his wife determined what property to transfer into RMC and RAC or why the transfers were made other than to say that he "picked stuff that [he] thought had a worth to it" and that he did so on the advice of counsel for "estate planning" reasons. He testified that he did what Attorney Rosen suggested and that he "assume[d] that it had to do with tax purposes if [he] die[d]." But he did not articulate any specific reasons why he believed the transfers to be advantageous.

On March 30, 1995, Interpool moved to void the challenged transfers as fraudulent conveyances, for an order directing Cuneo to turn over all of the assets so transferred to the Marshal in partial satisfaction of the judgment, and for other relief. Cuneo responded, in part, that the transfers could not be set aside because, *inter alia,* RMC, RAC, and Mrs. Cuneo were not before the Court. Plaintiff thereupon commenced the second of the actions captioned above against RMC, RAC, and Cuneo and his wife in their capacities as partners and trustees of each, respec-

tively, No. 95–2868. The second action seeks substantially the same relief as the motion in No. 89–8501. The defendants in No. 95–2868 have been served or waived service. No answers have been interposed, and the time within which to answer has expired.

The Court heard argument on Interpool's motion on April 24, 1995. Cuneo's counsel then argued that Cuneo was entitled to an evidentiary hearing, albeit only on the issue of whether Cuneo made the transfers with actual intent to defraud. (Tr. 32–34; see id. 28) Believing that the matter might be expedited by determining that issue first, but without determining that a hearing, even on that issue, was necessary, the Court scheduled an evidentiary hearing for May 11, 1995.

Shortly before the May 11 hearing, counsel for Cuneo advised the Court that Cuneo had been hospitalized with chest pains and sought an adjournment pending diagnosis and possible treatment. The Court rescheduled the hearing for May 23. On May 18, Cuneo's counsel requested another adjournment and submitted an affidavit from a doctor whom Cuneo consulted, which stated that Cuneo should refrain from participating in legal proceedings for "at least 3 to 4 weeks."[3] The Court denied the continuance without prejudice. It further ordered that any further continuance would be for the exclusive purpose of hearing testimony from Cuneo, thus making clear that the hearing would go forward on May 23.

At the May 23 hearing, neither party offered any additional evidence. Cuneo again applied for a continuance and made a purported offer of proof which listed subjects on which Cuneo proposed to testify if the continuance was granted. (DX A for identification) The offer of proof, however, listed subjects on which Cuneo proposed to testify without stating the substance of the proposed testimony. The Court again denied the requested adjournment and advised counsel that the Court would entertain a motion to reopen the record to hear Cuneo's testimony.

Later on May 23, Cuneo applied to reopen the record to hear his testimony at some unspecified date at least three or four weeks hence. The application again was denied on May 30, 1995. The Court made clear in its order that it regarded the matter as *sub judice* but would entertain a renewed motion if movants were to make one prior to the filing of the decision on this matter. A renewed motion would have to specify "exactly when and under what conditions Cuneo proposes to testify."

On May 31, 1995, counsel for Cuneo advised the Court that it intends to renew its motion to reopen and advised the Court that Cuneo would be physically capable of providing videotaped testimony on June 21, 1995 in Miami, Florida. The application has not been forthcoming and, in any case, would be immaterial in view of the basis for disposition of this matter.

### The Fraudulent Conveyance Issues

#### Conflict of Laws

Cuneo is a resident of Florida and claims that Florida law governs the validity of the transfers here at issue. In consequence, the starting point of analysis is consideration of whether there are any material differences between the law of New York and of Florida and, if so, which law governs.

The New York statute pertinent to the constructive fraud issue is Section 273–a of the Debtor and Creditor Law, which provides in relevant part that:

"Every conveyance made without fair consideration when the person making it is a defendant in an action for money damages ... is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment." N.Y. DEBTOR AND CREDITOR LAW § 273–a (McKinney 1990).

In addition, "[e]very conveyance made ... with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is

---

**3.** Cuneo's submission established that he had been released from the hospital on May 11 and had not suffered a heart attack.

fraudulent as to both present and future creditors." *Id.* § 276.

The most nearly corresponding parts of the Florida Uniform Fraudulent Transfer Act provide in relevant part:

"(1) A transfer made ... by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made ..., if the debtor made the transfer ...:

"(a) With actual intent to hinder, delay, or defraud any creditor of the debtor; or

"(b) Without receiving a reasonably equivalent value in exchange for the transfer ..., and the debtor:

\*    \*    \*    \*    \*    \*

"2. Intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due." FLA.STAT. ANN. § 726.105(1) (West 1988).

The statute goes on to set forth factors relevant to the determination of actual intent to defraud.

There is no material difference between the law of the two States with respect to actual fraud. At first blush, the differences between the two statutes suggest that a conflict of laws analysis is appropriate with respect to the claim of constructive fraud. On closer examination, however, the Court has concluded that there is no conflict in the circumstances of this case.

■ To begin with, the question whether the transfers were constructively fraudulent as to Interpool turns on whether Cuneo received appropriate consideration—"fair consideration" or "reasonably equivalent value," depending upon which State's law is applied—for the property transferred.[4] In intrafamily cases such as this, both States place the burden of proving "fair consideration" or "reasonable equivalence" on the defendant. *E.g., United States v. Horton,* 760 F.2d 1225, 1228 (11th Cir.1985) (Florida law); *Musso v. Herman,* 85 B.R. 683, 695 (Bankr.E.D.N.Y.1988) (New York law);

*ACLI Government Securities, Inc. v. Rhoades,* 653 F.Supp. 1388, 1391 (S.D.N.Y. 1987), *aff'd without opinion,* 842 F.2d 1287 (2d Cir.1988) (table) (New York law); *Orbach v. Pappa,* 482 F.Supp. 117, 118 (S.D.N.Y. 1979) (New York law); *Foster v. Thornton,* 131 Fla. 277, 179 So. 882 (1938). Moreover, as will appear below, the concepts of fair consideration and reasonably equivalent value are coextensive, at least in all respects material to this case. Certainly none of the parties has suggested otherwise. Nor has Cuneo contested Interpool's assertion that the transfers in question were made at a time when Cuneo reasonably should have believed that he would incur debts beyond his ability to pay, a conclusion that in any case flows quite naturally from the imminence of the trial in the multimillion dollar civil RICO case. *E.g., HBE Leasing Corp. v. Frank,* 851 F.Supp. 571 (S.D.N.Y.1994); *In the Matter of Superior Leather Co. v. Lipman Split Co., Inc.,* 116 A.D.2d 796, 496 N.Y.S.2d 845 (3d Dep't 1986). In consequence, there is no need to determine whether this question is governed by New York or Florida law.

*Constructive Fraud*

*RAC Family Trust*

■ As noted above, the trust instrument recites that Cuneo's transfer of his 95.613% limited partnership interest in RMC to the trustees was "for no consideration." In consequence, it is undisputed that Cuneo received no consideration whatever, much less fair consideration or reasonably equivalent value. The Court therefore holds that the transfer of that partnership interest to Cuneo and his wife, as trustees, was constructively fraudulent as to Interpool, and the transfer is set aside.

*RMC Holdings*

The contribution by Cuneo of all or substantially all of his non-exempt assets to RMC in exchange for general and limited

---

4. The New York statute requires also that the judgment be final. Cuneo does not dispute the finality of the judgment. In any case, "final" for this purpose means only the entry of judgment in the trial court. *Farino v. Farino,* 113 Misc.2d 374, 449 N.Y.S.2d 379, 386 (Sup.Ct. Nassau Co.1982).

partnership interests in an entity of which he and his wife are the sole partners, even disregarding the subsequent transfer of the limited partnership interest that the Court already has set aside, left him substantially judgment proof. A judgment creditor can do no more than levy upon Cuneo's interest in the partnership, which is defined by statute as his right to receive distributions, the amount and timing of which would remain in control of Cuneo and his wife, from the entity. Thus, the judgment creditor would be entitled to sell at auction the right to receive such sums as Cuneo and his wife might choose to distribute to the successful purchaser. This makes the transfer constructively fraudulent as to Interpool irrespective of the law applied.

### 1. New York

Section 272 of the New York Debtor and Creditor Law states in relevant part that:

"Fair consideration is given for property . . .

"a. When in exchange for such property . . ., as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied . . ."

Thus, in order to pass muster, the partnership interests Cuneo received must be a "fair equivalent" for what he transferred.

Cuneo transferred stock valued at $1.2 million, notes payable to himself valued at $110,000, and $47,600 in cash and cash equivalents. Prior to the transfer, he had complete dominion over all of this property including the right to sell or otherwise dispose of it. Accepting Cuneo's own appraisal of the worth of these assets, he had the right to realize nearly $1.4 million whenever he chose to do so. In exchange, he has obtained the right to receive whatever distributions he and his wife jointly agree should be made in respect of the partnership interests. While Mrs. Cuneo as a practical matter may accede to his wishes, the partnership agreement gives Cuneo no right to compel her to do so.

■ The rights of a judgment creditor are much more limited. The property rights of a partner are the partner's rights in specific partnership property, the partner's in-

terest in the partnership and, in the case of a general partner, the partner's right to participate in the management of the partnership. The rights in specific partnership property are not assignable and therefore of no relevance to creditors. FLA.STAT.ANN. § 620.68(2)(b) (West 1993). "A partner's interest in the partnership is his [sic] share of the profits and surplus." Id. § 620.685. And a conveyance by a partner of the partner's interest in the partnership neither dissolves nor gives the assignee the right to participate in the management of the partnership. Id. § 620.69(1). The assignee is entitled to receive only the profits to which the assigning partner otherwise would have been entitled. Id. In consequence, a judgment creditor, or more properly a purchaser of the partnership interests at a judicial sale, would receive no more than the right to receive whatever Cuneo and his wife chose to pay. See id. § 620.695 (court may appoint receiver for partner's share of profits and other money due to partner for benefit of creditor).

Cuneo argues that the partnership interests that he obtained constituted a fair equivalent for the property at issue. But he has submitted no evidence whatever in support of that assertion, which alone requires rejection of the argument in view of the fact that Cuneo bears the burden of proof. But the Court need not rely only on the burden of proof. It is readily apparent, and the Court finds, that the value of the partnership interests bears no reasonable relationship to the value of the property surrendered.

■ A conveyance is made for "fair consideration" under Section 272 of the New York Debtor and Creditor Law only if there is both an exchange of equivalent value and good faith. See In the Matter of BSL Dev. Corp. v. Aquabogue Cove Partners, Inc., —— A.D.2d ——, 623 N.Y.S.2d 253, 255 (2d Dep't 1995); Petersen v. Vallenzano, 849 F.Supp. 228, 231 (S.D.N.Y.1994) (New York law); HBE Leasing Corp. v. Frank, 837 F.Supp. 57, 60 (S.D.N.Y.1993), aff'd, 22 F.3d 41 (2d Cir.1994) (New York law).

In determining whether the conveyance was an exchange for equivalent value, Cuneo argues that the value of the partnership in-

terests must be assessed from Cuneo's standpoint rather than from the standpoint of a creditor. He asserts that the partnership interests are just as valuable as the property he exchanged, arguing that the partnership interests he received in exchange for $1.4 million in cash and securities are worth $1.4 million *to him*. Cuneo argues also that the extent of his control over the assets of the partnership and his wife's presumed acquiescence in his wishes will leave him in no worse position after the transfer than before.

■ Cuneo's argument is without merit. The existence of a fair exchange must be determined from the perspective of creditors rather than from the vantage point of the debtor. *See In re Prejean*, 994 F.2d 706, 708 (9th Cir.1993); *Musso v. Herman*, 85 B.R. 683, 696 (Bankr.E.D.N.Y.1988); *Megabank Financial Corp. v. Alpha Gamma Rho Fraternity*, 841 P.2d 318, 320 (Colo.App.1992); *Hansen v. Cramer*, 39 Cal.2d 321, 324–25, 245 P.2d 1059, 1061 (1952) (en banc). The *Tesmetges* court, for example, held that a conveyance is not an exchange for equivalent value when it makes the debtor "execution proof" and the debtor's assets unreachable by creditors. In determining whether a conveyance is fraudulent, "[t]he touchstone is the unjust diminution of the estate of the debtor that otherwise would be available to creditors." *Tesmetges*, 85 B.R. at 697 (quoting G. GLENN, THE LAW OF CONVEYANCES § 195 (1931)). Viewing the fairness of a transfer from the perspective of a creditor is consistent with the policy underlying statutes against fraudulent conveyances, which were enacted in order to protect the rights of creditors by preventing debtors from making transfers that would "hinder, defraud or delay" creditors. G. GLENN, FRAUDULENT CONVEYANCES AND PREFERENCES §§ 61d, 195 (Rev. ed. 1940).

■ Cuneo has done just that by rendering his $1.4 million in property virtually unreachable by the judgment creditor. Cuneo exchanged $1.4 million in cash and securities for general and limited partnership interests in RMC in which he received essentially three rights—the right to receive income and capital distributions from the partnership, the rights in the specific partnership

property, and the right to participate in management. Creditors can reach only Cuneo's right to the receipt of whatever distributions that the partnership—consisting only of Cuneo and his wife—chooses to makes, but cannot reach his rights in specific partnership property or, far more important, his right to participate in management. Viewing the transfer from the standpoint of Cuneo's creditors and their legal rights vis-a-vis Cuneo's partnership interests, the conveyance was not an exchange for equivalent value.

The conclusion that Cuneo did not receive equivalent value alone suffices to establish that the transaction was not made for fair consideration and, in consequence, that it must be set aside under New York law. Under Section 272 of the Debtor and Creditor law, moreover, a conveyance is made for "fair consideration" only if a fair equivalent was received and it was made in good faith. The Court, in the alternative, concludes also that the transfer was not made in good faith under Debtor and Creditor Law § 272. This independently requires the conclusion that the transfer was not for fair consideration and was constructively fraudulent.

■ A conveyance is not made in good faith under Section 272 when any of the following factors is missing: (i) an honest belief in the propriety of the activities in question; (ii) no intent to take unconscionable advantage of others; and (iii) no intent to, or knowledge of the fact that the activities in question will, hinder, delay or defraud others. *In re Ahead By A Length, Inc. v. Feiner*, 100 B.R. 157, 169 (Bankr.S.D.N.Y. 1989); *Southern Industries, Inc. v. Jeremias*, 66 A.D.2d 178, 411 N.Y.S.2d 945, 949 (2d Dep't 1978) (citing *Sparkman & McLean Co. v. Derber*, 4 Wash.App. 341, 481 P.2d 585 (1971)). Both the statute and the cases demonstrate, moreover, that actual intent to defraud need not be established in order to find an absence of good faith.

■ Section 273–a, as noted above, renders fraudulent certain transfers made without fair consideration "without regard to the actual intent of the defendant. . . ." The use of the quoted phrase thus demonstrates that the good faith essential under Section

272 to a conclusion of fair consideration requires more than the absence of an improper motive.[5] In *United States v. Tabor Court Realty Corp.*, 803 F.2d 1288, 1295–96 (3d Cir.1986), *cert. denied*, 483 U.S. 1005, 107 S.Ct. 3229, 97 L.Ed.2d 735 (1987), for example, the Court held that the transferee did not act in good faith within the meaning of the Pennsylvania counterpart to Section 272, without regard to its subjective intent or motive, because it knew that the transaction would render the transferor insolvent and deprive it of fair consideration. It thus held, in a phrase, that the transferee lacked good faith because it knew that the transfer would hinder the transferor's creditors.

Under this objective standard, the Court finds that Cuneo lacked good faith. The presence of the so-called "protective provisions" in the partnership agreement and the trust instrument coupled with the imminence of the trial make it inconceivable that Cuneo was unaware of the fact that the transfer of his property to the partnership would hinder or delay the judgment creditor even if he did not make the transfer for that purpose.[6]

The Court concludes that under New York law the conveyances were made without fair consideration because Cuneo did not receive a fair equivalent transfer and, in any case, because they were not made in good faith. In consequence, they were constructively fraudulent on each of two independent grounds and should be set aside.

### 2. Florida

■■■■■ The result is the same under Florida law. Section 726.105(1)(b) of the Florida Uniform Fraudulent Transfers Act provides that a transfer may be set aside as constructively fraudulent if the transfer was made for less than a reasonably equivalent value.[7] The Court finds that the transfer to RMC was unsupported by reasonably equivalent value both because Cuneo has failed to sustain, and without regard to, the burden of proof.

■■■■■ One of the purposes of setting aside transfers unsupported by reasonably equivalent value is "to protect creditors against the depletion" of an estate. *See General Elec. Credit Corp. of Tenn. v. Murphy*, 895 F.2d 725, 727 (11th Cir.1990). There is no precise test by which to ascertain whether a reasonably equivalent value has been received in a transfer. While market value once played a controlling, or at least dominant role, it now appears that the Court must consider the facts and circumstances of each case in order to determine whether reasonably equivalent value was given. *In re Morris Communications NC, Inc. v. Ashley Communications, Inc.*, 914 F.2d 458, 466–67 (4th Cir.1990); *Hall v. Quigley*, 131 B.R. 213, 216 (Bankr.N.D.Fla.1991).[8] The trier of fact should consider also any direct or indirect benefits conferred as a result of the transfer, as well as whether the transfer was at arm's length. Thus, the meaning of value under the "reasonably equivalent" Florida standard differs in no material way from the "fair consideration" analysis under New York law. Hence, the transfer fails to meet the reasonably equivalent value requirement for the same reasons that it lacked fair consideration under New York law.

---

**5.** An improper motive—"a failure to deal honestly, fairly and openly," *see Tesmetges*, 85 B.R. at 696 and *Ahead by a Length*, 100 B.R. at 169—of course would suffice to defeat a claim of good faith. It is unnecessary for the Court to determine Cuneo's subjective motives. Indeed, it assumes for purposes of the motion that his motive was estate planning as he claims.

**6.** The Court notes also that Cuneo at no point has contended that the good faith requirement of Section 272 was satisfied. In fact, at the April 24, 1995 hearing, counsel for Cuneo asserted that any evidentiary hearing to be held on the motion for an order invalidating the fraudulent conveyance would be limited to the issue of whether Cuneo's behavior in transferring his assets was *actually* fraudulent. (Tr. Apr. 24, 1995 at 34) Furthermore, the offer of proof made at the May 23 hearing (DX A for identification) did not propose that Cuneo would give any testimony relating to the issue of his knowledge of whether the transfer would hinder or delay creditors.

**7.** It should be noted that, in contrast to New York law, good faith plays no role in the analysis under Florida law.

**8.** These cases interpret 11 U.S.C. § 548. Section 548 of the Bankruptcy code and the Florida Uniform Fraudulent Transfers Act are of common ancestry. Cases under one therefore are authoritative under the other.

*Actual Intent to Defraud*

The Court need not address the issue of Cuneo's actual intent to defraud in view of the conclusion that the transfers were constructively fraudulent. Accordingly, there would be no need to reopen the evidentiary hearing record even if the Court were persuaded that Cuneo had established a basis for doing so.

### The Request for a Turnover Order

Interpool seeks also an order directing defendants to turn over to the United States Marshal all of the property transferred by Cuneo to RMC.

Rule 69 of the Federal Rules of Civil Procedure provides in substance that federal court proceedings with respect to the enforcement of judgments generally follow the procedure employed in the courts of the State in which the federal court sits. In consequence, we look to Section 5225 of the New York Civil Practice Law and Rules ("CPLR"), which deals with turnover orders.

Section 5225(b) provides in relevant part: "Upon a special proceeding commenced by the judgment creditor, against a person in possession of custody of money or other personal property in which the judgment debtor has an interest, or against a person who is a transferee of money or other personal property from the judgment debtor, where is it shown that the judgment debtor is entitled to possession of such property or that the judgment creditor's rights are superior to those of the transferee, the court shall require such person to pay the money, or so much of it as is sufficient to satisfy the judgment...."

A special proceeding under Section 5225 may serve as the means by which the Court sets aside a transfer made by a judgment debtor to defraud his or her creditors if the Court finds that the transfer at issue is fraudulent. *See Gelbard v. Esses,* 96 A.D.2d 573, 465 N.Y.S.2d 264, 267 (2d Dep't 1983).

Interpool, having commenced the second action, No. 95–2868, properly has brought before the Court all parties who are transferees of Cuneo's property—namely, Cuneo, Mrs. Cuneo, RMC and RAC. In view of the holding that Cuneo's transfers lacked both fair consideration and reasonably equivalent value, a turnover order is appropriate with respect to the property that was fraudulently transferred.

### Conclusion

For all of the foregoing reasons, Interpool's motion in No. 89–8501 is granted, and it is entitled to judgment in No. 95–2868. The transfers by Cuneo of (1) his limited partnership interest in RMC Holdings Limited Partnership to himself and his wife as trustees of the RAC Family Trust and (2) his stock in Intermodal Services, Inc. ("ISI"), notes made payable to him by Mitchell Greene in the aggregate amount of $110,000, and cash and cash equivalents totalling $47,-600 to RMC are declared to have been constructively fraudulent as to Interpool and set aside. Plaintiff shall settle on two days' notice an order in No. 89–8501 and a judgment in No. 95–2868 providing, in addition to such other relief as is appropriate in light of this decision, for the turnover of the property at issue to the United States Marshal for the Southern District of New York and its subsequent disposition. Pending settlement of that order and judgment, defendants RMC Holdings Limited Partnership and RAC Family Trust and their partners and trustees are enjoined from transferring in any manner any property in their possession, custody or control. The Court's prior orders as to the other defendants remain in effect.

SO ORDERED.