**Habibollah Haj Mohammad Hossein KASHI and Ashka B.M.M., Plaintiffs,**

v.

**Constantine G. GRATSOS, Theodore Graino, Wilbur A. Stile, David Friedmann, Gregory J. Roman, Carl Wischmann, Standard Grains (Canada) Ltd., Standard Grains, Inc., Standard Metropolitan Shipping Corporation, Theodore Graino & Co., Inc., in personam, Defendants.**

No. 80 Civ. 6642 (KTD).

United States District Court,
S.D. New York.

March 10, 1989.

Proskauer Rose Goetz & Mendelsohn, New York City, for plaintiffs; James Schreiber, of counsel.

Holtzmann, Wise & Shepard, New York City, for Victory Carriers, Inc.; David R. Foley, Kathy Dutton Helmer, of counsel.

Whitman & Ransom, New York City, for the Estate of Constantine G. Gratsos; Gary P. Rosenthal, of counsel.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

Plaintiffs Habibollah Haj Mohammad Hossein Kashi and Ashka B.M.M. (jointly "Kashi") move pursuant to Fed.R.Civ.P. 69(a), various sections of the New York Debtor and Creditor Law, New York Civil Practice Law and Rules, and this court's inherent power for an order directing Anastasia S. Gratsos and Victory Carriers, Inc. ("Victory"), to turn over certain monies to Kashi in satisfaction of a judgment entered by this court against the deceased defendant Constantine G. Gratsos ("Gratsos"). Gratsos' estate and Victory oppose Kashi's motion and Gratsos' estate moves pursuant to Fed.R.Civ.P. 11 for sanctions to cover the costs of opposing this motion. For the following reasons, Kashi's motion is denied at this time and Gratsos' estates' motion for sanctions is denied.

### FACTS

On November 24, 1980, Kashi commenced an action in this court to recover damages caused by the fraud of Gratsos and others. At that time, Gratsos was 79 years old and employed as the President of the Board of Directors of Victory. He and his wife, Anastasia Gratsos, maintained a rented apartment at 203 East 72nd Street in New York City ("the apartment"). Anastasia Gratsos (by her maiden name "Asta Sellin") and Gratsos are listed on the lease as occupants of the apartment. A corporation called Metropolitan Associates is named as the lessee. The rent for the apartment was paid by Gratsos, beginning at a time prior to his marriage to Anastasia Gratsos, through money orders purchased in the name of Metropolitan Associates.

In June 1981 Gratsos resigned from Victory at the request of its Board of Directors. Upon his resignation, the Board of Directors of Victory resolved to pay Gratsos retirement benefits of $10,000 per year for the rest of his life and, if his wife should survive him, to pay her $50,000 per year for the rest of her life. That resolution was memorialized in a contract with

Gratsos ("the Pension Agreement"). Gratsos would otherwise have received no pension from Victory as he was not eligible to participate in Victory's retirement plan.

Gratsos died on September 2, 1981. His wife became Administratrix of his estate. Some time near Gratsos' death the apartment became available for purchase as a co-operative. Anastasia Gratsos bought the apartment at the discounted insider price and resold it for a profit of approximately $57,000. Her agreement to sell the co-operative apartment was entered into on June 14, 1982, and consummated on September 27, 1982.

On December 1987 the Kashi action, after a trial and appeal, resulted in entry of a final judgment holding Gratsos and others jointly and severally liable to Kashi ("Kashi's judgment"). In the course of deciding the appeal, the Second Circuit decided to pierce the corporate veil of defendant Standard Metropolitan Shipping Corp. ("SMSC"), of which Gratsos was a principal, and to hold Gratsos liable for the full extent of Kashi's losses. *Kashi v. Gratsos,* 790 F.2d 1050, 1056–57, 1054–55 (2d Cir.1986). Approximately $1.5 million of that judgment remains unsatisfied.

## DISCUSSION

Kashi's motion in this court to enforce his judgment against Gratsos' estate, which is currently under the jurisdiction of the New York Surrogate's Court, raises questions of both jurisdiction and procedure. For the reasons that follow, this court's jurisdiction to issue orders to enforce its money judgments is not limited by New York's procedural requirement that a judgment creditor of a deceased judgment debtor obtain permission of the surrogate prior to execution of the judgment. Thus, if the property named by Kashi is properly included in Gratsos' estate, this court may issue appropriate orders to enforce its judgment against that property after making the creditor priority determinations usually made by the Surrogate's Court under the New York Estates, Powers and Trusts Law.

A. *Jurisdiction to Issue Orders in Support of Kashi Judgment*

█ The Gratsos' estate, appearing on behalf of Administratrix Anastasia Gratsos, and Victory assert that this court does not have the jurisdiction to enforce Kashi's judgment without first obtaining leave from the New York Surrogate's Court that administers the estate.

The Federal Rules of Civil Procedure, Rule 69(a) provides:

Process to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise. The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, ... except that any statute of the United States governs to the extent that it is applicable.

█ This rule does no more than establish a system of procedure for federal district courts. Neither this rule nor state law create or withdraw the district court's jurisdiction to enforce its judgment. *See Argento v. Village of Melrose Park,* 838 F.2d 1483, 1487 (7th Cir.1988); *Duchek v. Jacobi,* 646 F.2d 415, 417–19 (9th Cir.1981); *Gregris v. Edberg,* 645 F.Supp. 1153, 1157 (W.D.Pa.1986), *aff'd,* 826 F.2d 1055 (3rd Cir.1987); *Cunard Line Ltd. v. Abney,* 540 F.Supp. 657, 664 (S.D.N.Y.1982). A federal district court's jurisdiction to enforce its judgments by conducting supplemental proceedings and issuing orders is an inherent and "long recognized" authority. *Argento,* 838 F.2d at 1487. Indeed, the federal district court's enforcement jurisdiction includes the authority to issue orders that affect individuals that were not parties to the original action. *Clarkson Co. Ltd. v. Shaheen,* 544 F.Supp. 117, 120 n. 1 (S.D.N.Y.1982), *aff'd,* 716 F.2d 126 (2d Cir.1983).

█ State procedural law may impose some limitations on a federal district court's jurisdiction to enforce its judgments. Among such state law limitations are those that determine "the type of prop-

erty which can be subject to execution." *Marshak v. Green*, 746 F.2d 927, 930 (2d Cir.1984) (citations omitted). A federal district court's jurisdiction, however, is not limited by state procedural laws that, when read literally, indicate that only a specific state court may hold enforcement proceedings. *Duchek*, 646 F.2d at 417.

■ New York's procedural law that requires a judgment creditor to obtain permission of the Surrogate's Court prior to enforcing a judgment against the estate of a deceased judgment debtor does not limit a federal district court's jurisdiction to enforce its judgments. *Cf. Duchek*, 646 F.2d 415 (state procedural rule requiring judgment creditor to file petition with superior court of county to appraise homestead and conduct execution sale does not deprive federal court of enforcement jurisdiction). Deference to the Surrogate's Court for enforcement of a money judgment against the estate of the judgment debtor "is designed to preclude one creditor from obtaining a preference over another." *Gordon v. Gordon*, 110 A.D.2d 623, 625, 487 N.Y.S.2d 574, 577 (2d Dep't 1985). Given the proper information, this court can examine creditor preferences and, upon a finding that the judgment creditor of this court has priority, order appropriate execution. Indeed, this court has an obligation to issue orders to protect and effectuate its judgments. *Gregris*, 645 F.Supp. at 1157.

Gratsos' estate also argues that this court should not assert jurisdiction over this action because a plenary action is required to affect the assets in Anastasia Gratsos' possession. New York procedural rules, however, obviate the need for a plenary action. N.Y.Civ.Prac.L. & R. §§ 5225, 5227 (McKinney 1978); *Gelbard v. Esses*, 96 A.D.2d 573, 575, 465 N.Y.S.2d 264, 267 (2d Dep't 1983). This special "turnover" proceeding is therefore sufficient to resolve the parties rights in the disputed property.

## B. *Property Claimed by Kashi*

■ Property that may be subject to execution in New York includes past and not yet due debts and assignable or transferable property of the judgment debtor.

*Marshak*, 746 F.2d at 931 (citing N.Y.Civ. Prac.L. & R. § 5201 (McKinney 1978)). Kashi claims that both the profits from the purchase and sale of the apartment and the payments from Victory to Anastasia Gratsos under the Pension Agreement are property of Gratsos' estate that should be available for execution by judgment creditors. In support of these claims Kashi argues that the undisputed facts demonstrate that (1) the rights in and profits from the apartment belonged to Gratsos, as the President of Metropolitan Associates, because Metropolitan Associates is a sham corporation, owned by SMSC, whose corporate veil, like SMSC's, must be pierced, and (2) the Pension Agreement is a fraudulent conveyance as to Kashi because it represents the conveyance, without consideration, of Gratsos' right to receive payments, it occurred while Kashi's action for a money judgment was pending against Gratsos, it occurred while Gratsos was ill and dying, and Kashi's judgment against Gratsos remains unsatisfied.

### 1. *The Apartment*

■ argument that he is entitled to the profits from the purchase and sale of the apartment is based on allegations that Gratsos, through Metropolitan Associates, was the true lessor and paid the rent for the apartment. However a lease, even for a rent-controlled apartment, is not an attachable property interest in the hands of the lessee. A judgment creditor "cannot ... reach assets in which the judgment debtor has no interest." *Bass v. Bass*, 140 A.D.2d 251, 253, 528 N.Y.S.2d 558, 561 (1st Dep't 1988) (citations omitted).

An attachable property interest *may* have arisen if Gratsos was alive when the apartment became available as a co-operative. However, if he died prior to that time, then his interest in the possibility that the lease agreement would give rise to rights to purchase the co-operative and that Gratsos would have then chosen to purchase the co-operative is certainly too remote to constitute a property interest under N.Y.Civ.Prac.L. & R. § 5201. *See Supreme Merchandise Co., Inc. v. Chemical*

*Bank,* 70 N.Y.2d 344, 514 N.E.2d 1358, 520 N.Y.S.2d 734 (1987) (assignability of judgment debtor's interest in a Letter of Credit is insufficient to establish that interest as attachable "property" under § 5201 when the judgment debtor has the power to render the interest valueless); *ABKCO Indus. Inc., v. Apple Films, Inc.,* 39 N.Y.2d 670, 350 N.E.2d 899, 385 N.Y.S.2d 511, (1976) (judgment debtor's interest in a licensing agreement was attachable property under § 5201 because of assignability despite indeterminable value dependent upon contingent future events beyond the judgment debtor's control). This result would not change if I found, as Kashi asks that I do, that Metropolitan Associates' corporate veil should be pierced and that Gratsos' payment of rent rendered him the lessor of the apartment. Such considerations are only relevant in determining the portion of Gratsos' interest, if any, in the rights to purchase the co-operative.

The papers submitted in this matter do not provide me with sufficient information to determine when the right to purchase the apartment under the co-operative conversion plan arose. Thus, there are material issues of fact and a summary determination of Kashi's right is not appropriate at this time. *See Bass,* 140 A.D.2d at 253, 528 N.Y.S.2d at 560.

2. *The Payments Under the Retirement Plan*

■ Gratsos' estate argues that Victory's payments to Anastasia Gratsos are the result of Victory's policy decision on the appropriate form of retirement payment to Gratsos in appreciation for his long service, and therefore cannot constitute a conveyance by Gratsos under N.Y.Debt. & Cred.Law § 270 (McKinney 1945). Deposition testimony of Victory's then legal counsel and documentary evidence obtained from Victory indicate that Victory may have initially considered paying Gratsos a definite sum of $10,000 per year for ten years. The ultimate decision to designate a portion of that payment to Anastasia Gratsos by structuring it as a definite sum payable for an indefinite number of years may indicate that Gratsos negotiated with

Victory to structure the payment so as to intentionally transfer his right to receive the money to his wife, Anastasia Gratsos.

Kashi, as a judgment creditor, may set aside a transfer if he can show that his "rights to the property are superior to those of the transferee." N.Y.Civ.Prac.L. & R. § 5225(b). The superiority of rights in this situation "is a matter to be determined by applying the fraudulent conveyance provisions of the [New York] Debtor and Creditor Law." *Gelbard,* 96 A.D.2d at 576, 465 N.Y.S.2d at 268 (citations omitted). Under § 273–a of that law, a judgment creditor is not required to prove fraudulent intent in order to prove that a conveyance is fraudulent. N.Y.Debt. & Cred.Law § 273–a (McKinney 1945 & Supp.1989). The judgment creditor need only show that fair consideration was not given in exchange for the conveyance, that an action for money damages was pending against the conveyor at the time of the conveyance, and that the judgment remains unsatisfied. *See* N.Y.Debt. & Cred.Law § 273–a; *Schoenberg v. Schoenberg,* 113 Misc.2d 356, 358, 449 N.Y.S.2d 137, 139 (Sup.Ct. Nassau Cty.1982).

Kashi does not meet these requirements on the papers submitted in support of this motion. Whether or not Gratsos actually "conveyed" a right within the meaning of the New York Debtor and Creditor law raises material issues of fact. Thus, a summary determination of Kashi's possible right to attach Victory's payments under the Pension Agreement is not appropriate at this time.

CONCLUSION

This court has jurisdiction to enforce its judgment against Gratsos upon a proper proceeding initiated by Kashi. This "turnover" proceeding is properly initiated under New York law and Kashi is not required to implead Anastasia Gratsos individually or bring a plenary action. However, summary judgment is not appropriate on the evidence submitted. A hearing is therefore necessary to determine whether the profits from the purchase and sale of the apart-

ment and the payments under the Pension Agreement are properly included as assets of Gratsos' estate and, if so, the extent of Kashi's right to attach those assets under the priority-of-creditors rules in New York. The hearing will be held before me in courtroom 705 on March 23, 1989, at 10:00 a.m.

SO ORDERED.