09-5329-cv
Allied Maritime Inc. v. Descatrade SA

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

August Term 2009

(Argued: June 24, 2010                    Decided: September 3, 2010)

Docket No. 09-5329-cv

ALLIED MARITIME, INC.,

*Plaintiff-Counter-Defendant-Appellant,*

v.

DESCATRADE SA, also known as DESCA TRADE SA,

*Defendant-Counter-Claimaint-Appellee.*

Before: MINER, CABRANES, WESLEY, *Circuit Judges.*

––––––––––––––

Plaintiff appeals from a December 16, 2009, order of the United States District Court for the Southern District of New York (Shira A. Scheindlin, *Judge*) vacating the process of maritime attachment and garnishment issued on April 15, 2009 attaching defendant's assets to secure a putative foreign arbitral award. The District Court dismissed the complaint for want of jurisdiction. We hold that the District Court properly concluded that it lacked jurisdiction over defendant's bank account in Paris, France, the suspense account created by the bank in response to the attachment order, and any other intangible property arising from the electronic funds transfer.

Affirmed.

MICHAEL E. UNGER (Lawrence J. Kahn and Susan Lee, *of counsel*)
Freehill Hogan & Mahar LLP, New York, NY, *for Plaintiff-Counter-Defendant-Appellant.*

JACK A. GREENBAUM, Blank Rome LLP, New York, NY, *for Defendant-Counter-Claimant-Appellee.*

JOSÉ A. CABRANES, *Circuit Judge*:

We consider again questions arising from the attachment of electronic funds transfers ("EFTs") under Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure ("Rule B").

Plaintiff Allied Maritime, Inc., appeals from a December 16, 2009 order of the United States District Court for the Southern District of New York (Shira A. Scheindlin, *Judge*) vacating a process of maritime attachment and garnishment (the "attachment") issued on April 15, 2009, that attached defendant Descatrade's assets in the Southern District of New York and dismissing Allied's complaint for lack of jurisdiction. On appeal, Allied argues that the District Court erred by (1) refusing to attach Descatrade's account at BNP Paribas in Paris; (2) refusing to attach the suspense account, which Allied claims is located in New York; (3) refusing to attach Descatrade's right to a refund under the "money back guarantee" provision of the Uniform Commercial Code ("U.C.C."), N.Y. U.C.C. § 4-A-402(4); (4) denying Allied's request for discovery; and (5) declining to fashion an equitable remedy to restrain Descatrade's funds.

**BACKGROUND**

This case arises out of a maritime dispute between Allied and Descatrade over damages sustained to the *M/V Lok Pratap*, a vessel Descatrade chartered from Allied on July 9, 2008, to transport cargo from China to West Africa. The dispute is currently in arbitration in London, where Allied is seeking approximately $1.4 million in damages. On April 10, 2009, Allied filed a complaint

2

in the District Court seeking to attach Descatrade's assets under Rule B as pre-judgment security for Descatrade's obligations resulting from the arbitration in London.

When Allied filed its complaint, EFTs between two foreign banks that "cleared" momentarily through a so-called "intermediary bank"[1] in the Southern District of New York were, under the existing law of our Circuit, attachable property of the originator or beneficiary of the transfer under Rule B. *See Winter Storm Shipping, Ltd. v. TPI*, 310 F.3d 263 (2d Cir. 2002). *See generally Citibank, N.A. v. Wells Fargo Asia Ltd.*, 495 U.S. 660, 663 (1990) (explaining the process of "clearing" transactions between foreign dollar-denominated accounts in New York); *Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58, 60 n.1 (2d Cir. 2009) (explaining the operation of EFTs). As a result, on April 15, 2009 the District Court issued an attachment order and Allied served process on eleven banks in the Southern District through which it believed Descatrade might seek to transfer funds. In the normal course, such an order is issued *ex parte*—that is, without notice to the putative defendant, who would receive notice only if any of its property were attached. *ProShipLine, Inc. v. Aspen Infrastructures, Ltd.*, 585 F.3d 105, 111 (2d Cir. 2009).

On June 25, 2009, Descatrade instructed BNP Paribas in Paris to transfer $400,000 from an account at BNP Paribas in Paris to an account at HSBC France, also in Paris. BNP Paribas initiated an EFT, directing HSBC USA, N.A. in New York to credit Descatrade's account at HSBC France in Paris and to debit BNP Paribas's account with HSBC USA in New York. However, before the EFT reached HSBC USA, BNP Paribas suspended the transaction and placed the funds in a separate "suspense account" in an attempt to comply with the attachment order. It is unclear from the

---

[1] Under New York law, an "[i]ntermediary bank" is "a receiving bank other than the originator's bank or the beneficiary's bank." N.Y. U.C.C. § 4-A-104(2); *see Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58, 70 (2d Cir. 2009) ("When there is no federal maritime law to guide our decision, we generally look to state law to determine property rights.").

record on appeal whether the EFT was suspended—and the suspense account created—in New York or Paris.

On October 16, 2009, we overruled the decision that had permitted the attachment of EFTs in the hands of an intermediary bank under Rule B.[2] *Jaldhi*, 585 F.3d at 71, *abrogating Winter Storm*, 310 F.3d at 263. Because our opinion in *Jaldhi* altered the law of Rule B attachments in our Circuit, on October 21, 2009 the District Court *sua sponte* entered an order to show cause why it should not vacate the April 15, 2009 order of attachment.

In response, Allied argued that our holding in *Jaldhi* applied only to EFTs restrained at intermediary banks and that, because the EFT initiated by Descatrade had been restrained at the originating bank, BNP Paribas, *Jaldhi* did not apply. The District Court concluded—without applying *Jaldhi*—that New York's separate entity rule, *see Det Bergenske Dampskibsselskab v. Sabre Shipping Corp.*, 341 F.2d 50, 53 (2d Cir. 1965), precluded Allied from attaching Descatrade's BNP Paribas account in Paris through service on BNP Paribas in New York, *Allied Maritime, Inc. v. Descatrade SA*, No. 09 Civ. 3684, 2009 WL 4884160, at *2 (S.D.N.Y. Dec. 16, 2009).

Allied also argued that in the event the District Court concluded that it could not reach Descatrade's account at BNP Paribas in Paris, Descatrade retained an attachable interest in the suspense account pursuant to the U.C.C.'s "money back guarantee" provision, N.Y. U.C.C. § 4-A-402, which allows an originator to recover its funds in the event a funds transfer is not completed for any reason. *Allied Maritime*, 2009 WL 4884160, at *2–3. The District Court rejected this argument as well. The District Court determined that it was "unlikely" that the suspense account was located in New York. *Id.* at *2. Assuming, however, that it was indeed located in New

---

[2] We overruled *Winter Storm* without a formal *en banc* proceeding with the consent of all active judges on our Court. *See Shipping Corp. of India*, 585 F.3d at 67 & n.9.

York, and that the recovery right created under N.Y. U.C.C. § 4-A-402 may be an attachable interest, the District Court concluded that the location of the recovery right in this case was Paris and thus outside of the District Court's jurisdiction. *Id.* at *3. The District Court therefore vacated the attachment for want of jurisdiction. Allied filed a timely appeal of the District Court's order.

## DISCUSSION

We review a district court's order vacating a maritime attachment for "abuse of discretion." *Jaldhi*, 585 F.3d at 66. A district court has abused its discretion if it has (1) "based its ruling on an erroneous view of the law," (2) made a "clearly erroneous assessment of the evidence," or (3) "rendered a decision that cannot be located within the range of permissible decisions." *Sims v. Blot*, 534 F.3d 117, 132 (2d Cir. 2008) (citations and internal quotation marks omitted). We review *de novo* a district court's legal conclusions in an order vacating a maritime attachment. *Jaldhi*, 585 F.3d at 66.

**I.      Jurisdiction**

We agree with the District Court's conclusion that it lacked jurisdiction to uphold the attachment. As we explained in detail in *Jaldhi*, attachments are a remedy *quasi in rem*. *Id.* at 69. In cases where the District Court has no basis for personal jurisdiction over a party, jurisdiction can be established "based on the court's power over property within its territory." *See Shaffer v. Hetiner*, 433 U.S. 186, 199 (1977). In such cases, the District Court must have jurisdiction over the defendant's property in order to be able to affect the defendant's interests. *Id.* at 199 n.17 ("A judgment *quasi in rem* affects the interests of particular persons in designated property."). We conclude that, in the circumstances presented here, the District Court lacked jurisdiction over any of Descatrade's property.

5

**A. Jurisdiction over Descatrade's Bank Account in Paris**

Allied argues that BNP Paribas's presence in New York is sufficient to permit the District Court to exercise jurisdiction over Descatrade's account at BNP Paribas in Paris. We disagree. The District Court did not have jurisdiction over Descatrade's account with BNP Paribas in Paris.

Under New York law,[3] the "separate entity rule" dictates that "'each branch of a bank [be] treated as a separate entity for attachment purposes.'" *Sabre Shipping Corp.*, 341 F.2d at 53 (quoting *Cronan v. Schilling*, 100 N.Y.S.2d 474, 476 (Sup. Ct., N.Y. Cnty. 1950)); *see McCloskey v. Chase Manhattan Bank*, 11 N.Y.2d 936, 937 (1962) (assets in a foreign branch cannot be attached in New York). As a result, "the debt owed by a branch finds its situs within the territorial jurisdiction of [that] branch." *Id.* (internal quotation marks omitted). Put differently, "the mere fact that a bank may have a branch within New York is insufficient to render accounts outside of New York subject to attachment." *John Wiley & Sons, Inc. v. Kirtsaeng*, No. 08 Civ. 7834, 2009 WL 3003242, at *3 (S.D.N.Y. Sept. 15, 2009) (internal quotation marks omitted). The parties do not dispute that Descatrade's only account with BNP Paribas is in Paris. Applying the separate entity rule, because Descatrade's account with BNP Paribas is in Paris—and only in Paris— that account cannot be attached in New York. We agree with the District Court that "if Allied seeks to attach Descatrade's bank accounts, it may do so only at the branch where the account exists." *Allied Maritime*, 2009 WL 4884160, at *2.

**B. Jurisdiction over the Suspense Account in New York**

Alternatively, Allied contends that the suspense account is (1) in New York and (2) attachable there. It is unclear from the record on appeal whether the suspense account was created

---

[3] Again, we apply New York law here because there is no federal maritime law to guide our decision. *See* note 1, *ante*; *see also Jaldhi*, 585 F.3d at 70; *Reibor Int'l Ltd. v. Cargo Carriers Ltd.*, 759 F.2d 262, 266 (2d Cir. 1985).

6

at BNP Paribas in Paris or at BNP Paribas in New York. The District Court considered both alternatives, and concluded that it was "unlikely" that the funds were in New York. *Allied Maritime*, 2009 WL 4884160, at *2. However, even if, we assume that Allied is correct about the location of the suspense account—namely, that the account is in New York— that account would not be attachable property of Descatrade.

As we noted recently in *Scanscot Shipping Serv. (Deutschland) GmbH v. Metales Tracomex LTDA*, "[a]fter an EFT is initiated by an originator's bank, the funds at issue cease to be the property of the originator; the funds do not then become the property of the beneficiary until the EFT is completed by acceptance of a payment order by the beneficiary's bank." No. 09-5280, — F.3d —, 2010 WL 3169304, at *2 (2d Cir. Aug. 12, 2010). In the interim, these funds are not property subject to attachment of either originator or beneficiary. *Id.* "That [Descatrade] may be in the position of both originator and beneficiary does not change the Rule B analysis." *Id.* Like the bank account in *Scanscot Shipping*, BNP Paribas "created the suspense account solely as a result of an order of attachment relating to funds now determined to be beyond the reach of the [D]istrict [C]ourt." 2010 WL 3169304, at *2. Thus, "the new suspense account neither cures the jurisdictional defect nor provides a basis for reattachment of the same funds." *Id.*

**C.      Jurisdiction over the Right to Repayment**

Allied also argues that BNP Paribas's decision to stop the EFT and segregate funds associated with the transfer in a suspense account entitles Descatrade to a right of repayment under the so-called "money-back guarantee" provision of N.Y. U.C.C. § 4-A-402(4).[4] Allied argues that

---

[4] N.Y. U.C.C. § 4-A-402(3)-(5) provides, in relevant part:

(3) . . . With respect to a payment order issued to a receiving bank other than the beneficiary's bank, acceptance of the order by the receiving bank obliges the sender to pay the bank the amount of the sender's order. Payment by the sender is not due until the execution date of the sender's order. The obligation of that sender to pay its payment order is excused if the funds transfer is not completed by

this right of repayment is an attachable property interest under Rule B. The District Court properly concluded that, regardless of whether the suspense account was in Paris or New York, the the right to repayment under U.C.C. § 4-A-402(4), like the suspense account itself, cannot be attached. *Allied Maritime*, 2009 WL 4884160, at *2. The *Scanscot Shipping* analysis is no less applicable to the recovery right under U.C.C. § 4-A-402(4) derived from a suspense account than it is to the suspense account itself.[5] The jurisdictional defect that renders the suspense account unattachable under Rule B also renders unattachable any recovery right arising out of that suspense account. As one court has aptly observed, "[n]o alchemy by the bank [can] transform[] EFTs that cannot be attached into property of the defendant that can be attached." *Argus Dev. Inc. v. Steelcore Trading Ltd.*, No. 09-6009, 2009 WL 4016626, at *1 (S.D.N.Y. Nov. 16, 2009).

## II.     Plaintiff's Other Claims of Error

Allied argues that the District Court erred in denying its request for discovery. We reverse or modify a district court's denial of a discovery request "only upon a clear showing of an abuse of

---

acceptance by the beneficiary's bank of a payment order instructing payment to the beneficiary of that sender's payment order.

(4) If the sender of a payment order pays the order and was not obliged to pay all or part of the amount paid, the bank receiving payment is obliged to refund payment to the extent the sender was not obliged to pay. . . .

(5) If a funds transfer is not completed as stated in subsection (3) and an intermediary bank is obliged to refund payment as stated in subsection (4) but is unable to do so because not permitted by applicable law or because the bank suspends payments, a sender in the funds transfer that executed a payment order in compliance with an instruction . . . to route the funds transfer through that intermediary bank is entitled to receive or retain payment from the sender of the payment order that it accepted. The first sender in the funds transfer that issued an instruction requiring routing through that intermediary bank is subrogated to the right of the bank that paid the intermediary bank to refund as stated in subsection (4).

[5] We do not reach the question of whether a right to a refund under the U.C.C.'s "money back guarantee" is an intangible property interest that "could be attachable property under Rule B" in other circumstances. *Allied Maritime*, 2009 WL 4884160, at *3. We hold only that our case law does not permit the attachment of such an interest under Rule B where, as here, a suspense account that purportedly triggers the right is created solely in order to hold funds that were improperly attached in the first place.

8

discretion." *Wills v. Amerada Hess Corp.*, 379 F.3d 32, 51 (2d Cir. 2004). Here, Allied has failed to make such a showing.

Finally, we consider Allied's argument that the District Court erred in declining to fashion an equitable remedy. As a court sitting in admiralty, we "may use equitable principles where appropriate to avoid injustice." *Montauk Oil Transp. Corp. v. Sonat Marine, Inc.*, 871 F.2d 1169, 1172 (2d Cir. 1989). We cannot conclude that it was error for the District Court to decline to design an equitable remedy in favor of Allied in the circumstances presented here, where Allied sought to continue to attach funds that were improperly attached under a now-abrogated legal theory.

## CONCLUSION

In sum, we hold as follows:

(1) The District Court properly concluded that it lacked jurisdiction over Descatrade's bank account with BNP Paribas in Paris because the "separate entity rule" foreclosed Allied from attaching a BNP Paribas account in Paris by serving BNP Paribas in New York. *See Det Bergenske Dampskibsselskab v. Sabre Shipping Corp.*, 341 F.2d 50, 53 (2d Cir. 1965).

(2) The District Court properly concluded that whether the suspense account was created in Paris or New York, the District Court lacked jurisdiction over the suspense account and any interest arising from the money-back guarantee provision of the U.C.C., N.Y. U.C.C. § 4-A-402(3)-(4), because both the account and the derivative rights created therein cannot be attached where the District Court lacks jurisdiction over the EFTs that the suspense account was created to hold. *See Scanscot Shipping Serv. (Deutschland) GmbH v. Metales Tracomex LTDA*, No. 09-5280, — F.3d —, 2010 WL 3169304 (2d Cir. Aug. 12, 2010).

Accordingly, for the reasons stated above, the order of the District Court is **AFFIRMED**.