**JW OILFIELD EQUIPMENT, LLC, Petitioner,**

v.

**COMMERZBANK AG, Respondent.**

**No. 18 MS 0302(PKC).**

United States District Court, S.D. New York.

Jan. 14, 2011.

Oksana G. Wright, Fox Rothschild LLP, New York, NY, for Petitioner.

George E. Mastoris, Dewey & LeBoeuf LLP, New York, NY, for Respondent.

## MEMORANDUM AND ORDER

P. KEVIN CASTEL, District Judge:

Petitioner JW Oilfield Equipment, LLC ("Oilfield") obtained a judgment in the United States District Court for the Western District of Oklahoma against J.J.S. Oilfield Supply, GmbH ("Judgment Debtor" or "JJS"). Oilfield registered the judgment in this district and now seeks to enforce it through an application for a turnover order. Specifically, Oilfield moves this Court for a "turnover" order pursuant to Rule 69(a), Fed.R.Civ.P., and N.Y. CPLR § 5225(b), ordering Commerzbank AG ("Commerzbank") to remit certain funds held in a checking account of JJS. Commerzbank objects, arguing that granting the turnover order would deprive JJS of rights protected by the Due Process Clause of the United States Constitution. Alternatively, Commerzbank argues that this Court should refrain from exercising jurisdiction based on the principles of international comity, and that the Court should dismiss the petition on *forum non conveniens* grounds.

BACKGROUND

I. *Oklahoma Proceedings*

On March 20, 2009, JJS filed a complaint against Oilfield in the United States District Court for the Western District of Oklahoma (the "Oklahoma Court"). *JJS Oilfield Supply GmbH v. JW Oilfield Equipment, LLC*, 09 Civ. 00301 (W.D. Okla. 2009). Oilfield defended the suit, and at the close of a two-day jury trial was granted judgment as a matter of law pursuant to Rule 50, Fed.R.Civ.P., on June 23, 2010. Oilfield subsequently moved for attorney's fees against JJS, and on August 9, 2010 was granted a judgment for $166,169.53 in attorney's fees. No appeal has been filed from that judgment.

JJS did not satisfy the judgment, and on September 9, 2010, Oilfield moved for a Judgment Debtor Exam under 12 O.S. § 842, made applicable by Rule 69(a), Fed.R.Civ.P. The motion was granted by United States Magistrate Judge Doyle W. Argo, ordering J.J. Steinbeck, principal and corporate representative for JJS, to appear on October 26, 2010 and produce documents regarding corporate assets. This order also forbade JJS from transferring or otherwise disposing of any money or property until further order of the court. Neither JJS nor Steinbeck appeared as directed.

On November 29, 2010, the Honorable Tim Leonard, U.S.D.J., ordered J.J. Steinbeck to show cause in writing by December 27, 2010, why he should not be held in civil contempt for failing to appear and produce documents. Judge Leonard also granted the application of counsel for JJS to withdraw, but ordered that JJS secure and file an entry of appearance by other counsel within thirty days.

On January 10, 2010, the court found Steinbeck to be in civil contempt due to his continued violation of the September 13, 2010 order and because of his failure to respond to the order to show cause. The court imposed a daily civil fine in the amount of $100.00 per day for each day he continues to violate the September 13, 2010 order, and awarded attorney's fees and costs to the plaintiff, Oilfield.

II. *New York Proceedings*

On October 22, 2010, Oilfield filed this application against Commerzbank in the Southern District of New York, seeking a

turnover order pursuant to Rule 69(a), Fed.R.Civ.P. and N.Y. CPLR §§ 5225(b). Oilfield seeks to enforce the judgment of the Western District of Oklahoma, which was registered in this district pursuant to 28 U.S.C. § 1963. It requests a turnover order against Commerzbank, where JJS holds a bank account. On November 4, 2010, the Honorable Miriam Goldman Cedarbaum, U.S.D.J., ordered that Commerzbank restrain and freeze any accounts maintained for the benefit of or in the name of JJS, including without limitation any such accounts in Germany. Oral argument was held before me on December 28, 2010, as the district judge then presiding in Part I. Commerzbank opposed the petition.

### III. *German Proceedings*

Pursuant to the September 9, 2010 order of the Oklahoma Court, Commerzbank froze assets in accounts in the name of JJS up to the amount of the judgment. On November 1, 2010, JJS filed a Petition for the Issue of an Injunction against Commerzbank in the Frankfurt Regional Court, Commercial Division (the "German Court"), seeking to require Commerzbank to pay over the money frozen in its account. Commerzbank filed a Response on November 5, and the German Court, by order dated November 8, 2010, denied JJS's petition for a temporary injunction.

### DISCUSSION

### I. *Procedure*

Rule 69(a)(1), Fed.R.Civ.P., provides that a money judgment is enforced by a writ of execution, and the "procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located" if no federal statute applies.

Section 5225(b) of the N.Y. CPLR provides the process by which a judgment creditor may compel "a person in possession or custody of money or other personal property in which the judgment debtor has an interest ... to pay the money, or so much of it as is sufficient to satisfy the judgment, to the judgment creditor...." N.Y. CPLR 5225(b). Section 5225(b) requires the judgment debtor to proceed by way of special proceeding. *Id.* A special proceeding is a creature of New York law with no federal analogue. "A special proceeding is a civil judicial proceeding in which a right can be established or an obligation enforced in summary fashion. Like an action, it ends in a judgment, but the procedure is similar to that on a motion. Speed, economy and efficiency are the hallmarks of this procedure." Alexander, Comment C401:1 (McKinney's N.Y. CPLR, 2010) (internal citations omitted).

██ Because Oilfield could not commence a "special proceeding" in this Court, Rule 2, Fed.R.Civ.P., it proceeded by filing an action against Commerzbank with a petition for issuance of a writ of execution and turnover order. No party has objected to this procedure. Rule 69(a) "does no more than establish a system of procedure for federal district courts." *Kashi v. Gratsos,* 712 F.Supp. 23, 25 (S.D.N.Y.1989) (Duffy, J.). "Neither this rule nor state law create or withdraw the district court's jurisdiction to enforce its judgment." *Id.*[1]

### II. *Extraterritorial Application of N.Y. CPLR § 5225(b)*

██ Commerzbank contends that it should not be required to turn over any

---

1. Though Judge Duffy was examining the issue with respect to a judgment originally entered in his own district in *Kashi,* the principle is the same for a judgment originating from another district. *See* 28 U.S.C. § 1963 ("A judgment [registered under this section] shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner.").

funds it holds in the name of JJS, because the funds at issue are on deposit in a German bank at a branch in Germany. The issue of extraterritorial application of N.Y. CPLR § 5225(b) was the subject of a recent opinion of the New York Court of Appeals, responding to a question certified to it by the Second Circuit. *Koehler v. Bank of Bermuda Ltd.*, 12 N.Y.3d 533, 883 N.Y.S.2d 763, 911 N.E.2d 825 (2009), *answering question certified by Koehler v. Bank of Bermuda Ltd.*, 544 F.3d 78 (2d Cir.2008). The New York Court of Appeals concluded that "a New York court with personal jurisdiction over a defendant may order [that defendant] to turn over out-of-state property regardless of whether the defendant is a judgment debtor or a garnishee." *Id.* at 541, 883 N.Y.S.2d 763, 911 N.E.2d 825.

In *Koehler*, a Pennsylvania citizen obtained a judgment in an action in the United States District Court for the District of Maryland against a Bermuda resident. The plaintiff, Koehler, registered the judgment in the Southern District of New York, then sought to enforce it in that court through a turnover petition directed to the Bank of Bermuda Limited ("BBL"). BBL held stock certificates owned by the judgment debtor. BBL argued that a New York court could not lawfully order a party, other than the judgment debtor himself, to deliver assets into New York, even if the court had personal jurisdiction over the party. The New York Court of Appeals disagreed. The Court distinguished postjudgment enforcement from a prejudgment attachment, which is based on a court's jurisdiction over the property being attached. It concluded that postjudgment enforcement (such as a proceeding under N.Y. CPLR article 52) requires only jurisdiction over persons. "In short, article 52 postjudgment enforcement involves a proceeding against a person—its purpose is to demand that a person convert property to money for payment to a creditor—whereas article 62 attachment operates solely on property, keeping it out of a debtor's hands for a time." *Id.* at 538, 883 N.Y.S.2d 763, 911 N.E.2d 825.

The New York Court of Appeals reasoned that when a judgment debtor is subject to a New York court's personal jurisdiction, "that court has jurisdiction to order the judgment debtor to bring property into the state, because the court's authority is based on its personal jurisdiction over the judgment debtor." *Id.* at 540, 883 N.Y.S.2d 763, 911 N.E.2d 825. The authority of the court to order a garnishee to bring property into the state is likewise based on personal jurisdiction over that garnishee. BBL argued that where there is no personal jurisdiction over the judgment debtor, the court must have *in rem* jurisdiction over the property, even if the garnishee is within the court's personal jurisdiction. The Court of Appeals disagreed, finding that personal jurisdiction over the judgment debtor and *in rem* jurisdiction over the property are not necessary where the court's order is acting on the person of the garnishee.

■ In this case, Commerzbank does not dispute that this Court has personal jurisdiction over it. Under N.Y. CPLR § 301, New York courts may exercise general jurisdiction over a foreign corporation where that corporation is "engaged in such a continuous and systematic course of 'doing business' here [in NY] as to warrant a finding of its 'presence' in this jurisdiction." *Simonson v. Int'l Bank*, 14 N.Y.2d 281, 285, 251 N.Y.S.2d 433, 200 N.E.2d 427 (1965). Such "general" jurisdiction, predicated upon corporate presence, " 'does not fail because the cause of action sued upon has no relation in its origin to the business here transacted.' " *Laufer v. Ostrow*, 55 N.Y.2d 305, 313, 449 N.Y.S.2d 456, 434 N.E.2d 692 (1982) (quoting *Tauza v. Sus-*

*quehanna Coal Co.*, 220 N.Y. 259, 268, 115 N.E. 915 (1917)).

Commerzbank admits that it does business in New York systematically and continuously through its New York branch, which is not incorporated and is not an entity separate from the German bank. This Court has general personal jurisdiction over Commerzbank, and thus under *Koehler*, this Court may issue a turnover order under N.Y. CPLR § 5225(b) directing Commerzbank to turn over funds up to the amount of the judgment, regardless of whether those accounts are held in Germany or New York.

### III. *Due Process Rights*

Noting that this Court has neither personal jurisdiction over JJS nor *in rem* jurisdiction over the asset of JJS, Commerzbank argues that ordering it to bring assets into New York from Germany would violate the due process rights of JJS. Brief in Opposition at 2 ("[A]pplication of Koehler here would violate the constitutional rights of judgment debtor JJS Supply.").

### A. Commerzbank's Standing to Raise the Due Process Rights of the Judgment Debtor

 In order to raise the due process rights of JJS, Commerzbank must first show that it has standing to raise those rights. As a general rule, a claimant does not have standing to assert the constitutional claims of a third party. *Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) ("[E]ven when the plaintiff has alleged injury sufficient to meet the 'case or controversy' requirement, ... the plaintiff generally must as-

sert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.").[2] An exception to this general rule is found in the doctrine of *jus tertii*, or third-party standing. This doctrine is "designed to minimize unwarranted intervention into controversies where the applicable constitutional questions are ill-defined and speculative." *Craig v. Boren*, 429 U.S. 190, 193, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976). Therefore, courts will require that a party seeking third-party standing make two additional showings. First, the litigant must have a "close" relationship with the person who possesses the right. Second, there must be a "hindrance" to the possessor's ability to protect his own interests. *Kowalski v. Tesmer*, 543 U.S. 125, 130, 125 S.Ct. 564, 160 L.Ed.2d 519 (2004) (citing *Powers v. Ohio*, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411. 411 (1991)).

Commerzbank urges that it has a "close relationship" to JJS in the context of third-party standing, because it is an "effective advocate" for the due process rights of the third party. *See Singleton v. Wulff*, 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976). However, Commerzbank will not necessarily be an effective advocate for JJS, because Commerzbank and JJS are not closely aligned in interest. In fact, JJS has brought a proceeding against Commerzbank in Germany because Commerzbank has honored freeze orders of United States courts. In that litigation, Commerzbank itself expresses compelling reasons why JJS's due process rights are *not* being violated here:

"Even if the laws of the State of New York and the orders issued on the basis

---

**2.** Although in most third-party standing cases it is the plaintiff attempting to asserting the rights of a third party, the analysis is the same where, as here, it is the defendant (or respondent) asserting such rights. *See, e.g., U.S.*

*Dep't of Labor v. Triplett*, 494 U.S. 715, 110 S.Ct. 1428, 108 L.Ed.2d 701 (1990) (respondent raised the due process rights of third parties in defense of enforcement of an attorney disciplinary board's decision).

of them would not justify any objection [to JJS' petition to unfreeze its assets], [JJS] in any event cannot invoke them. It conducts business in the USA. It took legal action against Oilfield Equipment in the USA and is liable for the opposing party's legal costs. After all, it disclosed the existence of the account with Commerzbank's Celle branch in the course of the proceedings and even informed Oilfield Equipment that the amount in dispute had been frozen in its account in Germany. In such a case [JJS] cannot claim that the freezing of an account is only permissible if the measures provided for in the German Code of Civil Procedure [ZPO] were taken."

Declaration of George Mastoris Exhibit 1.D (Commerzbank AG's Response to JJS Supply's Petition in the Frankfurt Regional Court, Paragraph II.2.f.).

Furthermore, as Commerzbank acknowledges, its true interest is not in maintaining control over the assets held in JJS's name. Rather, Commerzbank claims to be subject to conflicting duties under the legal systems of two sovereign nations, the United States and Germany. It fears that it may be forced to pay the same amount twice. Brief in Opposition at 2. The dispute in Germany has not been finally resolved. However, if the German Court were to find that Commerzbank could rightfully freeze and/or turn over JJS's assets based on lawful orders of the United States courts, then Commerzbank would no longer have any incentive to litigate the instant case and protect JJS's due process rights. It is unlikely that Commerzbank would spend money to press its case (or an appeal) in such a situation, and would therefore not be an effective advocate. This indicates that the interests of Commerzbank and JJS are not truly aligned.

Further, even if, hypothetically, JJS were present and doing business in New York, thus satisfying any due process concerns, Commerzbank would still have the same objection to being caught between the German and United States legal systems. The due process argument that Commerzbank raises is a red herring. The concern over conflicting judgments by different sovereigns is more appropriately addressed under principles of international comity.

■ Moreover, there is no "hindrance" to JJS's ability to protect its own interests. It easily could have intervened in this action, of which it was given notice by Petitioner's counsel and Respondent's counsel. NY CPLR § 5225(b) ("The court may permit the judgment debtor to intervene in the proceeding."); see Hausler v. JP Morgan Chase Bank N.A., 740 F.Supp.2d 525, 541 (S.D.N.Y.2010) ("[W]here a turnover proceeding is commenced by a judgment creditor pursuant to CPLR § 5225(b) against a person in possession or custody of money in which the judgment debtor has an interest, any adverse claimant may intervene in the proceeding in-order to assert a superior claim. . . ."). Respondent's claim that such intervention would "result in nullification of the right at the very moment of its assertion" is of doubtful validity. Commerzbank does not explain why JJS could not have filed a special appearance in order to object to the jurisdiction of the court without risking a waiver. Rule 12(b)(2), Fed R. Civ. P.; Grammenos v. C.M. Lemos, 457 F.2d 1067, 1070 (2d Cir.1972). See also U.S. v. All Right, Title and Interest in Contents of Following Accounts at Morgan Guar. Trust Co. of New York, No. 95 Civ. 10929, 1996 WL 695671 (S.D.N.Y. Dec. 5, 1996) (finding that claimants in a civil forfeiture proceeding, with rights similar to intervenors, could have objected to personal juris-

diction while still making claims against the res). Notably, JJS freely chose to submit to the jurisdiction of the court in the Western District of Oklahoma, a forum of significantly greater distance from Germany than is New York.

Therefore, because Commerzbank and JJS do not have a "close relationship" and there is no hindrance to JJS's ability to raise its own constitutional defenses, Commerzbank does not have standing to raise JJS's due process rights.

## IV. Separate Entity Rule

■ Commerzbank also argues that it should not be forced to turn over the assets in the JJS account because they are held on deposit in Germany and not available through the New York branch, based on New York's "separate entity rule."

■ The "separate entity rule" in New York requires that " 'each branch of a bank [be] treated as a separate entity for attachment purposes.' " *Det Bergenske Dampskibsselskab v. Sabre Shipping Corp.*, 341 F.2d 50, 53 (2d Cir.1965) (quoting *Cronan v. Schilling*, 100 N.Y.S.2d 474, 476 (Sup.Ct., N.Y.Cnty.1950)); *see McCloskey v. Chase Manhattan Bank*, 11 N.Y.2d 936, 937, 228 N.Y.S.2d 825, 183 N.E.2d 227 (1962) (assets in a foreign branch cannot be attached in New York). Commerzbank cites the corollary principle that a judgment creditor stands in the shoes of a judgment debtor, with no greater rights, and because JJS could not withdraw from the New York branch, neither can Oilfield. *See United States v. First Nat'l City Bank*, 321 F.2d 14 (2d Cir.1963), *rev'd on other grounds* 379 U.S. 378, 85 S.Ct. 528, 13 L.Ed.2d 365 (1965) (applying separate entity rule to find that "the garnishor ob-

tains no greater right against the garnishee than the garnishee's creditor had"). Commerzbank submits a declaration from Stefan Triebler, a Vice President in the New York branch of Commerzbank AG, stating that "[a]s a matter of Bank policy, a corporate or business customer of the Bank that does not have an account with the Bank's New York branch cannot, under any circumstance ... withdraw from the New York branch of the bank funds on deposit in an account opened by that customer in Germany." Triebler Decl. at ¶ 3. Therefore, the bank argues, Oilfield cannot withdraw funds through the New York branch because JJS would not be able to do so.

However, this argument fails for two reasons. First, *Koehler* indicates that New York courts will not apply the separate entity rule in post-judgment execution proceedings. *See Koehler*, 12 N.Y.3d 533, 883 N.Y.S.2d 763, 911 N.E.2d 825. In *Koehler*, the Bank of Bermuda held the assets at issue in its Bermuda location, but the Bank was served in New York and the New York court established personal jurisdiction based upon the presence of the New York branch. Indeed, Commerzbank recognizes that *Koehler* effectively preempts application of the separate entity rule here. *See* Brief in Opposition at 15 n.13 ("This [separate entity] rule ... was followed in New York until *Koehler*.").[3]

Commerzbank argues that allowing Oilfield to execute on the judgment in New York would give Oilfield greater rights than the judgment debtor, because JJS could not withdraw funds from the New York Branch. However, the pertinent question is not whether JJS would be able

---

**3.** The separate entity rule may still have application in prejudgment attachment proceedings, even after *Koehler*. *See, e.g., Allied Maritime, Inc. v. Descatrade SA*, 620 F.3d 70 (applying separate entity rule to maritime at-

tachment proceeding incorporating New York law); *John Wiley & Sons, Inc. v. Kirtsaeng*, No. 08 Civ. 7834(GEL)(DCP), 2009 WL 3003242 (applying separate entity rule to attachment proceeding).

to withdraw funds directly from the New York branch. The question, rather, is whether JJS, if it were in New York, could direct the *entity,* Commerzbank, to pay over the money it holds on deposit in JJS's name in Germany, to an account in New York. Commerzbank makes no claim that JJS lacks such a right.

This Court has *in personam* jurisdiction over Commerzbank by virtue of its presence in New York, creating general jurisdiction over the entire entity. This "general" jurisdiction " 'does not fail because the cause of action sued upon has no relation in its origin to the business here transacted.' " *Laufer v. Ostrow,* 55 N.Y.2d 305, 313, 449 N.Y.S.2d 456, 434 N.E.2d 692 (1982) (quoting *Tauza v. Susquehanna Coal Co.,* 220 N.Y. 259, 268, 115 N.E. 915 (1917)). The order here would issue against the entity, not against the New York branch, and Commerzbank has put forth no evidence that it could rightfully refuse to pay over the assets it holds to a location in New York. Oilfield is not asserting any greater rights as a judgment creditor than those JJS has as a customer of the bank.

Because this Court undisputedly has personal jurisdiction over the bank based on its presence here, this Court has the authority, under N.Y. CPLR § 5225(b), to order Commerzbank to turn over funds to a New York-based account designated by Oilfield.

## V. *Comity*

■ Commerzbank also argues that this court should exercise its discretion to decline to exercise jurisdiction here, where its decision would conflict with the laws of a foreign sovereign nation. Commerzbank claims that German banking law does not allow a German bank to respond to an execution of a foreign judgment unless ordered to do so by a German court. Thus, an order requiring turnover would place it

in the untenable position of having to either violate this Court's order or German banking laws. If Commerzbank paid over the assets pursuant to this Court's order, it claims that it would then be required to pay the judgment debtor that same amount pursuant to German law.

Commerzbank argues that the issue of comity should be decided using the five-factor test set out in *Minpeco, S.A. v. Conticommodity Servs., Inc.,* 116 F.R.D. 517, 526–27 (S.D.N.Y.1987). This test states:

> Where two states have jurisdiction to prescribe and enforce rules of law and the rules they may prescribe require inconsistent conduct upon the part of a person, each state is required by international law to consider, in good faith, moderating the exercise of its enforcement jurisdiction, in the light of such factors as
>
> (a) vital national interests of each of the states,
>
> (b) the extent and the nature of the hardship that inconsistent enforcement actions would impose upon the person,
>
> (c) the extent to which the required conduct is to take place in the territory of the other state,
>
> (d) the nationality of the person, and
>
> (e) the extent to which enforcement by action of either state can reasonably be expected to achieve compliance with the rule prescribed by that state.

*Id.* This test was adopted in this circuit "for evaluating the propriety of an order directing production of information or documents located abroad where such production would violate the law of the state in which the documents are located." *United States v. Davis,* 767 F.2d at 1033–34 (2d Cir.1985). It has been used in the context of foreign bank and professional secrecy

laws, slightly modified in the context of document discovery to take account of the "importance to the litigation of the information and documents requested," and "the good faith of the party resisting discovery." *First American Corp. v. Price Waterhouse LLP*, 154 F.3d 16, 22 (2d Cir. 1998); *In re Vivendi Universal, S.A. Securities Litigation*, 618 F.Supp.2d 335, 341 (S.D.N.Y.2009); *Minpeco*, 116 F.R.D. at 523. While the turnover order at issue here is different from an order compelling discovery, both are orders subject to enforcement and backed by the contempt power of the court. Therefore, the five-factor balancing test from *Minpeco* is appropriate for evaluating the question of comity here.

A. The Vital National Interests of Each of the States

Commerzbank argues that Germany has a strong interest in bank regulation and the enforcement of foreign judgments. While this is undoubtedly true, Commerzbank's position is undercut by its own filings in the German Court action. Contrary to its statements in this Court, Commerzbank will not likely be caught in the crosshairs of German law. Rather, as Commerzbank has argued in the German Court, JJS's entitlement to the assets in the account is subject to objections, including under German Code of Civil Procedure ("ZPO"), 22nd edition, § 829 Rn. 105:

"A garnishee must, however, in any event be regarded as free of obligation if he has, by a disputed legal judgment which was passed abroad and would have been recognized and enforceable in the home country as well, been obliged to make payment out of assets located there because either a German seizure was not recognized there or a foreign seizure was considered to take priority. This is the case because the protection due pursuant to § 407 of the German

Code of Civil Procedure [BGB] to someone who pays voluntarily without being aware of it is also due to someone who in spite of awareness has no alternative course of action open to him."

Declaration of Horst Ahlers, Exhibit D.II.2.C. Thus, Commerzbank has available to it a defense akin to legal impossibility.

The German Court's denial of JJS's petition is significant. In the document subpoena context, the Second Circuit has found that "[t]he absence of any objection by the [foreign] government to the subpoena and subsequent order ... is significant." *Davis*, 767 F.2d at 1035. Similarly, the German Court denied JJS's application for a temporary injunction which would have released the funds, which were frozen pursuant to an order of this Court, and expressed "considerable doubts" about "whether the Petitioner is entitled to an injunction." Declaration of Horst Ahlers at Exhibit F. A German court, presented with a related controversy, has not espoused the view that the interests of Germany in applying its own banking laws outweighs the United States' interest in enforcing its own judgments.

■ Furthermore, it also well established that "orders of foreign courts are not entitled to comity if the litigants who procure them have 'deliberately courted legal impediments' to the enforcement of a federal court's orders." *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 60 (2d Cir. 2004). While Commerzbank has not "courted" any legal impediments, the same may not be said as to JJS. JJS affirmatively availed itself of the jurisdiction of the United States Court for the Western District of Oklahoma, but now has flouted lawful orders of the Oklahoma Court requiring a Judgment Debtor Exam. The United States has a strong interest in enforcing its judgments, especially against

those who affirmatively avail themselves of its courts and then attempt to avoid the consequences.

### B. The Extent and Nature of the Hardship

Commerzbank's compliance with a turnover order does not require the violation of the criminal law of a foreign power, as in *Societe Internationale etc. v. Rogers*, 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958). Nor does it risk the imposition of sanctions that are the substantial equivalent of criminal penalties, as in *Application of Chase Manhattan Bank*, 297 F.2d 611, 613 (2d Cir.1962), or conflict with the public policy of a foreign state as expressed in legislation. *U.S. v. First Nat. City Bank*, 396 F.2d 897, 901 (2d Cir.1968). Rather, the hardship faced by Commerzbank is "a possible prospective civil liability flowing from an implied contractual obligation between [the bank] and its customers that, we are informed, is considered implicit in the bank's license to do business in Germany." *Id.* Commerzbank is not facing criminal or quasi-criminal penalties in Germany, but merely speculative civil liability.

Courts in this Circuit have noted that the first two factors are "far more important in the balancing test than the last three." *Minpeco*, 116 F.R.D. at 522. Regarding the next two factors, the conduct in this case will take place in Germany, and Commerzbank is a German company. As to the final factor, enforcement of the turnover order will vindicate the judgment of the Oklahoma Court; in contrast, it is uncertain how the German Court would rule or whether Commerzbank would be without any other recourse against JJS. These three factors do not outweigh the strong United States interest in enforcement of its own judgments. Therefore, based primarily on the national interests at stake and the speculative hardship Commerzbank faces, international comity does not require this court to decline to enforce the judgment of the District Court for the Western District of Oklahoma through turnover proceedings in this district.

### VI. *Forum Non Conveniens*

Finally, Commerzbank argues that this Court should dismiss the petition on grounds of *forum non conveniens*. Such a dismissal is warranted where there is an adequate alternative forum, and when the balance of private and public interest factors favor the foreign forum. *See Bank of Credit and Commerce Int'l (Overseas) Ltd. v. State Bank of Pakistan*, 273 F.3d 241, 246 (2001). This Court notes that some commentators, including Professor David Siegel, have criticized the *Koehler* decision as a matter of commercial public policy, and Professor Siegel suggests the use of the doctrine of *forum non conveniens* as a flexible way to consider the relevant policy factors. David D. Siegel, *"Koehler": Creating Mecca for Creditors or Anti–Mecca for Garnishees?*, New York Law Journal, July 28, 2009, at 4 (col. 1). On the facts of this case, dismissal based upon *forum non conveniens* is not appropriate. Assuming that Germany is an adequate alternative forum, the balance of private and public interest factors favors this Court's exercise of jurisdiction.

In a *forum non conveniens* analysis, a plaintiff's decision to sue in a forum within the United States is entitled to some weight. *Bigio v. Coca–Cola Co.*, 448 F.3d 176, 179 (2d Cir.2006). Here, Oilfield chose to sue in a United States court for "legitimate reasons," and therefore more deference must be given to that choice. *Id.* Oilfield is an Oklahoma company which was sued by JJS in the United States, obtained the judgment of a United States court, and subsequently had its efforts to enforce that judgment frustrated by the Judgment Debtor's retreat to a foreign

country. It was perfectly reasonable under these circumstances for Oilfield to bring this enforcement action in its own country, the United States, rather than Germany. The extra time and cost associated with such an action would be substantial. Importantly, Oilfield did not initiate this lawsuit. JJS chose to sue in a United States court. There is no reason Oilfield should have to bring its action in a foreign forum, at greater expense and with the outcome uncertain. These legitimate reasons are entitled to substantial weight.

The convenience factors here do not weigh heavily in any direction. There are no witnesses to be called, very little in the way of documents, and the parties all have attorneys based in New York. "[I]t cannot be said that there are private inconveniences present here that outweigh the deference ... accorded [to] plaintiff[s] choice of forum." *Id.* at 180.

The "public interest" factors are as described above in the comity analysis, and weigh in favor of deference to the plaintiffs' legitimate choice of forum.

Therefore, in the exercise of discretion, I decline to dismiss this petition on the basis of *forum non conveniens*.

CONCLUSION

For the foregoing reasons, the petition for a writ of execution and turnover order is GRANTED. JW Oilfield Equipment Company, LLC may submit a proposed order on notice to Commerzbank AG, who will have three days to state its objections to the form of the order.

SO ORDERED.